**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TOM HARDISTY,
            *Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,
            *Defendant-Appellee.*

No. 08-35919

D.C. No.
3:06-cv-01670-BR

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
October 9, 2009—Portland, Oregon

Filed January 25, 2010

Before: Diarmuid F. O'Scannlain and N. Randy Smith,
Circuit Judges, and Ronald M. Whyte,* District Judge.

Opinion by Judge O'Scannlain

---

*The Honorable Ronald M. Whyte, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

Ralph Wilborn, Wilborn Law Office, P.C., Oregon City, Oregon, argued the cause for the plaintiff-appellant. Tim Wilborn filed the briefs.

Kathryn A. Miller, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, Seattle, Washington, argued the cause for the defendant-appellee and filed the brief. Karin J. Immergut, United States Attorney, Britannia I. Hobbs, Assistant United States Attorney, and David Morado, Regional Chief Counsel, Social Security Administration, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We consider whether a plaintiff may be awarded attorneys' fees against the United States under the Equal Access to Justice Act with respect to issues not reached by a district court in reversing a federal agency's decision.

## I

### A

Tom Hardisty filed a claim for supplemental security income in 2003, alleging disability from early 2001 based on several serious degenerative disk diseases, attention deficit hyperactivity disorder, and a mathematics learning disorder. The Social Security Administration ("SSA") denied his claim initially and on reconsideration. An administrative law judge ("ALJ") then held a hearing on Hardisty's claim in 2005. At that hearing, the ALJ heard testimony from Hardisty, a lay witness, numerous physicians, a vocational expert, and others. In due course, the ALJ decided that Hardisty was not entitled to benefits because, although he had a severe impairment, he retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy.

After the SSA's Appeals Council denied Hardisty's request for review, making the ALJ's decision the final decision of the SSA's Commissioner, Hardisty sought judicial review on numerous grounds. In 2008, the district court reversed and remanded to the Commissioner for the calculation of an award and benefits, ruling that substantial evidence did not support the ALJ's credibility determination with respect to Hardisty's testimony. A month after judgment on the merits, Hardisty filed a request for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), which was denied.[1] Hardisty timely appealed denial of fees.

### B

The ALJ based his decision on an adverse credibility finding against Hardisty. That finding rested on three grounds. First, the ALJ reasoned that Hardisty's criminal history,

---

[1]The amount, $8,866.12, included the cost of filing the fees request. It does not include the cost of this appeal.

involving numerous property crimes committed eighteen years ago in California, constituted a basis for questioning his credibility. Second, the ALJ noted that a medical report from Dr. Melanie Vergara, one of Hardisty's physicians, was inconclusive regarding malingering. Third, the ALJ found that Hardisty intentionally sought to mislead the SSA when he testified that he had driven only halfway to the hearing, a statement contradicted by his own lay witness. Even though Hardisty later corrected his testimony, the ALJ decided that the record overall belied Hardisty's credibility.

In challenging the Commissioner's ruling, Hardisty first argued that the government erred when it "improperly rejected Plaintiff's testimony." He also raised several other arguments, including that the government improperly rejected lay witness testimony and Dr. Vergara's opinion, improperly evaluated residual functional capacity, posed an improper hypothetical to the vocational expert, and failed appropriately to question the vocational expert.

The district court ruled that the Commissioner had not provided clear and convincing reasons for discrediting Hardisty's testimony as required by *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (per curiam). Specifically, the court explicitly rejected each of the government's three reasons for discrediting Hardisty's testimony. With respect to the first reason, Hardisty's criminal history, the court ruled Hardisty's crimes, which did not involve dishonesty and occurred more than eighteen years prior to the hearing, too "remote" to be a clear and convincing reason to discredit Hardisty. The court relied on Federal Rule of Evidence 609, which allows for the admission of evidence of crimes involving dishonesty but not evidence of crimes older than ten years without a further balancing of probative value and prejudicial effect. With respect to the second reason, evidence of malingering, the court ruled that the government failed to identify what evidence undermined the claimant's complaints and failed to discredit the doctors who provided evidence corroborating

Hardisty's account. With respect to the third reason, the inconsistency about driving, the court noted that Hardisty had corrected his testimony on who drove to the hearing, thereby resolving the conflict. The court then, pursuant to *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988), remanded for the calculation and award of benefits.

C

In ruling on the subsequent EAJA request, the court first addressed the issue on which Hardisty's claim had been remanded, concluding that the Commissioner's position was "substantially justified" and thus not a basis for EAJA fee-shifting. 28 U.S.C. § 2412(d)(1)(A). The court observed that the ALJ's reliance on Hardisty's criminal history, though contrary to the Federal Rules of Evidence, was not unlawful because such Rules do not apply to administrative proceedings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005). The court concluded, furthermore, that there was "some basis" for the ALJ's finding of malingering because of Dr. Vergara's report and that the ALJ's interpretation of the testimony regarding driving, while erroneous, had "some basis in the record." Thus, the court ruled, the Commissioner's position was substantially justified and fee-shifting was not appropriate.

The court next addressed Hardisty's argument that fees should be awarded for the government positions that Hardisty challenged but that it did not address when it originally reviewed the case. Those positions too, according to Hardisty, were not substantially justified. The court, however, declined to award fees on these issues in the absence of the identification of any authority, including circuit precedent, requiring it to do so.

II

On appeal, Hardisty first argues that fees should be awarded for those agency positions that Hardisty challenged but that the district court did not decide.

A

**[1]** As always in cases of statutory interpretation, we begin with the text of the statute. 28 U.S.C. § 2412. The text is particularly important in this case because the Supreme Court has refused to allow the award of attorneys' fees without clear statutory authorization. *Alyeska Serv. Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 250 (1975) (citing *Day v. Woodworth*, 54 U.S. (13 How.) 363 (1852); *Oelrichs v. Spain*, 82 U.S. (15 Wall.) 211 (1872); *Flanders v. Tweed*, 82 U.S. (15 Wall.) 450 (1873); *Stewart v. Sonneborn*, 98 U.S. 187 (1879); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 (1967); *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116 (1974)); *see Ruckelshaus v. Sierra Club*, 463 U.S. 680, 686 (1983) ("Given all the foregoing, we fail to find in [the statute] the requisite indication that Congress meant to abandon historic fee-shifting principles . . . ."); *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991) ("[W]e cannot extend the EAJA to administrative deportation proceedings when the plain language of the statute . . . constrain[s] us to do otherwise."); *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 610 (2001) ("In *Alyeska*, we said that Congress had not 'extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted.' ") (internal citations omitted). That is in part because, in reviewing claims for attorneys' fees, "[o]ur basic point of reference is the 'American Rule.' " *Ruckelshaus*, 463 U.S. at 684 (citing *Alyeska*, 421 U.S. at 247). That rule, which provides that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *Alyeska*, 421 U.S. at 247, has dominated the American court system

since its beginning, *see id.* at 271 (remarking that the American rule is "deeply rooted in our history").

**[2]** The EAJA creates an exception to the American rule. 28 U.S.C. § 2412. It authorizes federal courts to award attorneys' fees, court costs, and other expenses when a party prevails against the United States, although fee-shifting is not mandatory. *United States v. 313.34 Acres of Land*, 897 F.2d 1473, 1477 (9th Cir. 1989). The statute provides that

> Except as otherwise specifically provided by statute, *a court shall award to a prevailing party other than the United States fees and other expenses*, *in addition to any costs awarded . . .* , incurred by that party in any civil action . . . , including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust*.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).[2] The term " 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

**[3]** Nothing in these provisions extends fee-shifting to issues not adjudicated. Section 2412(d)(1)(A) provides no indication that attorneys' fees should be awarded with respect to positions of the United States challenged by the claimant but unaddressed by the reviewing court. Nor does the definition clause in Section 2412(d)(2)(D) support fee-shifting. That clause was amended to its current form in 1985 to focus

---

[2]The government has the burden of proving its positions were substantially justified. *Flores v. Shalala*, 49 F.3d 562, 569 (9th Cir. 1995).

courts on both the government's litigation position and the agency's ruling. *Comm'r, INS v. Jean*, 496 U.S. 154, 159 (1990). In the absence of clear statutory text authorizing fee-shifting, we decline to become a "roving authority" awarding attorneys' fees. *Buckhannon*, 532 U.S. at 610.

1

There are good reasons for denial of attorneys' fees in situations regarding which the EAJA is silent. First, "[t]he EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity." *Ardestani*, 502 U.S. at 137. "Waivers of immunity," of course, "must be construed strictly in favor of the sovereign, and not enlarge[d] . . . beyond what the language requires." *Ruckelshaus*, 463 U.S. at 685-86 (internal citations and quotation marks omitted) (citing *Alyeska*, 421 U.S. at 267-68).

The Supreme Court has repeatedly interpreted attorneys' fees statutes narrowly because of this concern. In *Ardestani*, for example, the Court reasoned that its interpretation of the EAJA as not applying to administrative deportation proceedings was "reinforced . . . by the limited nature of waivers of sovereign immunity [which] must be strictly construed in favor of the United States." *Id.* at 137. Similarly, in *Ruckelshaus*, the Court interpreted an attorneys' fee statute to require that a party prevail because "[i]n determining what sorts of fee awards are appropriate, care must be taken not to enlarge [the statute's] waiver of immunity beyond what a fair reading of the language of the section requires." 463 U.S. at 686 (internal quotation marks omitted). And in *Alyeska*, the Court reversed an award of attorneys' fees absent statutory authorization, noting the "well-known common-law rule that a sovereign is not liable for costs unless specific provision for such liability is made by law." 421 U.S. at 267-68 & n.42. Sovereign immunity concerns are especially relevant to interpreta-

tion of the attorneys' fees provisions in the EAJA, which does not broadly waive immunity. *Ardestani*, 502 U.S. at 137.

Such concerns are also particularly relevant to this case. An award of attorneys' fees without textual support in the EAJA, as Hardisty desires, increases the exposure of the United States treasury. Such a step, without clear statutory authorization, we decline to take. We are especially hesitant because extending the EAJA in this case constitutes an extreme departure from the American Rule, as the claimant failed to prevail on the remaining issues on which he seeks fees. *See Buckhannon*, 532 U.S. at 598 (requiring judicial recognition of victory to merit attorneys' fees); *Ruckelshaus*, 463 U.S. at 680 (requiring some degree of success on the merits for fees).

2

Second, denial of attorneys' fees in the face of silence in the EAJA follows the command that "[a] request for attorney's fees should not result in a second major litigation." *Buckhannon*, 532 U.S. at 609 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Avoiding an interpretation that "ensur[es] that the fee application will spawn a second litigation of significant dimension" is central to Supreme Court jurisprudence on fee-shifting statutes. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). In *Buckhannon*, for example, the Court rejected the "catalyst theory" for assessing whether a party has prevailed — under which a party may acquire fees if the suit was a catalyst for change in the relationship between the litigants — because it "is clearly not a formula for 'ready administrability,' " 532 U.S. at 610 (quoting *Burlington v. Dague*, 505 U.S. 557, 566 (1992), as a " 'catalyst theory' hearing would require analysis . . . that 'will likely depend on a highly factbound inquiry and may turn on reasonable inferences from the nature and timing of the defendant's change in conduct." *Id.* at 609. Similarly, in *Garland*, the Court rejected the "central issue test" in favor of the "significant issue" test because the former "promises to

mire district courts entertaining fee applications in an inquiry which two commentators have described as 'excruciating.' " 489 U.S. at 791. And in *Hensley*, the court framed its remand to the district court to determine the proper amount of attorneys' fees with the warning that, nonetheless, "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437.

Hardisty's interpretation would require just such extensive collateral litigation. He asks that the district court review all challenges by the claimant, no matter how numerous, to see whether the government's position lacked substantial justification. And he asks that the district court do so even on those issues that the district court chose not to reach in its original decision. Such an inquiry requires the district court to decide whether government positions it may not have evaluated at all were in fact substantially justified. That puts the district court in the position of conducting essentially de novo review of the entire case for purposes of the fee litigation, contrary to the command against "spawn[ing] a second litigation" of the Supreme Court and to the far more streamlined "substantial justification" review envisioned by the EAJA itself. We decline to impose such burdens on district courts.

B

Hardisty argues that *Flores v. Shalala*, 49 F.3d 562 (9th Cir. 1995), controls the outcome in this case in his favor. In *Flores*, we held that district courts should focus on whether the government's position on the particular issue on which the claimant earned remand was substantially justified, not on whether the government's ultimate disability determination was substantially justified. *Id.* at 569. This holding, of course, does not address the question of awarding attorneys' fees on issues the claimant raised but on which he did not earn remand. Hardisty points to a footnote in *Flores* suggesting that "attorney's fees might be appropriate" in a situation like his. *Id.* at 566 n.5. The problem with Hardisty's argument is

that the footnote merely foreshadows the issue in this case without suggesting a resolution, as the *Flores* court recognized. *Id.* ("[W]e need not decide that [foreshadowed] question here."). And even if the footnote is suggestive of a resolution, it is no more than dicta. Furthermore, if *Flores* bears on the outcome of this case at all, it weighs against awarding attorneys' fees because, as the government argues, the court in *Flores* focused on the issue on which the claimant earned remand. *Id.*

Hardisty also raises policy concerns. He argues that on our view the district court can ignore egregious ALJ errors, reverse on a trivial matter, and thus deny attorneys' fees. This possibility conflicts, in Hardisty's view, with the purpose of the EAJA, which was designed to encourage litigation against government action. *See* Equal Access to Justice Act, Extension and Amendment, H.R. Rep. No. 120, *as reprinted in* 1985 U.S.C.C.A.N. 132.

We do not find this policy argument persuasive. The first problem with Hardisty's argument is its view of the district court. In Hardisty's view, district judges can be disingenuous. On the one hand, they carefully scrutinize agency reasoning to ferret out erroneous agency rulings against claimants. They labor to vindicate the claimants. On the other hand, they manipulate the claimants' arguments so as to reach only those positions on which the government was *both* wrong *and* substantially justified. They thus stab the claimants in the back by denying fees. This is an unrealistic, cynical, and perhaps paranoid view of what district court judges do. We are satisfied that district judges traditionally decide cases on the strongest ground the plaintiff raises both for reasons of fairness, clarity, and judicial efficiency and to protect their rulings on appeal. A district judge who navigates the narrow path Hardisty envisions wastes a great deal of judicial energy. And he exposes himself to reversal by this court because walking the line Hardisty posits — reversing the agency on closer questions instead of obvious ones — by definition means that his rul-

ings are weaker than they need to be. We decline to take such a warped view.

But even if Hardisty's conception of the friendly but back-stabbing federal judge were true, Hardisty's view creates several policy problems of its own. First, it requires district courts to rule on every issue raised by the plaintiffs. But, although litigants are the masters of their suits, judges are in charge of resolving cases. Second, and relatedly, Hardisty's view encourages plaintiffs to raise and to brief every conceivable issue, as the longer the list the more likely the district court, which has to consider every issue raised, might stumble upon a government position lacking substantial justification. This, in turn, forces the government to expend more resources defending itself in fee litigation, responding to every claim raised by plaintiffs. The policy consequences of Hardisty's position are far from appealing. And proceeding down that path is unjustified in light of the unlikelihood that a district court judge would ever act as Hardisty hypothesizes.

**[4]** In the end, Hardisty's appeal to policy concerns at most confronts us with competing policy arguments. Such a debate is not enough to overcome the absence of statutory text authorizing supersession of the American Rule in this situation, especially considering the judicially cognizable canons of interpretation disfavoring the abrogation of sovereign immunity and the spawning of collateral litigation. We therefore decline to extend the EAJA to require review of those issues raised by the plaintiff but not addressed by the district court.

## III

Hardisty also challenges the district court's ruling that the government's position on the issue it did consider, the adverse credibility finding, was substantially justified. A position is "substantially justified" if it has a "reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The district court found that the government's adverse credi-

bility finding, which rested on inferences regarding the claimant's convictions, the claimant's testimony concerning who drove to the hearing, and Dr. Vergara's report not denying malingering, was substantially justified. This is a question of the application of law to fact. We review the district court's ruling for abuse of discretion. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).

**[5]** The government's adverse credibility finding was substantially justified because all of the inferences upon which it rested had substance in the record. The government's reliance on stale convictions was not inconsistent with the Federal Rules of Evidence, which do not apply to administrative proceedings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005). It thus had a reasonable basis in law and fact. The government's interpretation of the inconsistency regarding who drove to the hearing was also substantially justified, as even Hardisty admitted his confused statements cast doubt on his credibility. Finally, the government's reliance on Dr. Vergara's report was substantially justified because that report does question the severity of Hardisty's symptoms.

**[6]** Nor is there merit to Hardisty's argument that the government's action lacked substantial justification because the ALJ failed to tie his findings to specific evidence. On the contrary, the government pointed to the three pieces of evidence noted to support his adverse credibility finding. The district court did not abuse its discretion in finding substantial justification.

## IV

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2010 Thomson Reuters/West.