WALLACE, Circuit Judge,
dissenting:
I dissent. Our decision in Sternberg, properly read, controls this case and requires reversal. However, even if it did not control, we should still reverse.
Although these errors are significant, they solely affect the outcome of this case. More troubling is the BAP’s decision to rely upon one of its own cases, notwithstanding the fact that we had previously rejected the statement of law at issue. The implications of such cavalier disregard by the BAP for its subordinate status within the federal judiciary are far-ranging, and merit much greater attention than the majority bestows on them.
I.
America’s Servicing Company (ASC) violated the automatic stay in Schwartz-Tallard’s Chapter 13 bankruptcy case. The bankruptcy court issued an order awarding Schwartz-Tallard damages for ASC’s willful violation. ASC then returned Schwartz-Tallard’s property, but appealed from that order on procedural grounds to the district court. The district court mostly affirmed the damages award. Schwartz-Tallard now seeks to recover the attorneys’ fees she expended in defending the bankruptcy court’s judgment in that appeal. Not convincing the bankruptcy court of her attorneys’ fees position, she chose to appeal, this time to the BAP, which ruled in her favor. In re Schwartz-Tallard, 473 B.R. 340 (9th Cir. BAP 2012). ASC appeals from the BAP.
This case is governed by 11 U.S.C. § 362(k)(l), which allows “an individual injured by any willful violation of [the automatic] stay ... [to] recover actual damages, including costs and attorneys’ fees ...” The BAP held under section 362(k)(l) that Schwartz-Tallard was entitled to the attorneys’ fees she paid defending against ASC’s appeal. Schwartz-Tallard, 473 B.R. at 347-50. First, the BAP attempted to distinguish this case from our decision in Sternberg v. Johnston, where we rejected the argument that “actual damages” under section 362(k)(l) cover attorneys’ fees expended for the prosecution of an adversary proceeding to recover damages suffered from a violation of the automatic stay. 595 F.3d 937, 945-48 (9th Cir.2010). The BAP concluded that the defense of an opposing party’s appeal “is fundamentally different” from the affirmative damages action filed by the debtor in Sternberg. Schwartz-Tallard, 473 B.R. at 349. Unlike in Sternberg, said the BAP, Schwartz-Tallard was “not using the automatic stay as a sword to pursue damages from ASC.” Id.
After attempting to distinguish this case from Sternberg, the BAP held that Schwartz-Tallard is entitled to her attorneys’ fees, because her defense of the appeal “was consistent with the goals of the automatic stay identified by the court in Sternberg,” and ASC’s appeal “deprive[d] [Schwartz-Tallard] of the benefits of her automatic stay,” so her “defense of the bankruptcy court’s decision was an extension of her efforts to enforce her automatic stay.” Id. The BAP suggested that *973 Schwartz-Tallard was entitled to attorneys’ fees because ASC’s stay violation was not remedied until ASC lost its appeal. Id. at 350 (“Of course, in Sternberg, the point at which the stay violation had been ‘remedied’ was clear.... In contrast, here, while the Property was finally reconveyed to [Schwartz-Tallard] the day after ASC filed its notice of appeal, [Schwartz-Tal-lard] was forced to defend that appeal to validate the bankruptcy court’s ruling”). The BAP also relied on its prior decision of In re Walsh, where it held that “[c]learly, fees and costs experienced by an injured party in resisting the [stay] violator’s appeal are part of the damages resulting directly from the stay violation.” Id., quoting In re Walsh, 219 B.R. 873, 878 (9th Cir. BAP 1998).
The majority now affirms the BAP’s position. The basic structure of the majority’s opinion is the same as that of the BAP. First, the majority attempts to distinguish Sternberg. The majority states that we “specifically held” in that case “that any fees a debtor incurs ‘in pursuit of a damage award ’ are not covered” by section 362(k)(1). Majority Op. at 970-71 (emphasis in original). Here, however, the majority asserts that Schwartz-Tallard “was not pursuing a damage award,” was “remedying the stay violation,” and “was not using the stay as a sword.” Majority Op. at 970-71. The majority then explains why, in its view, Schwartz-Tallard is entitled to attorneys’ fees: it believes awarding these fees is consistent with the plain language of section 362(k)(l), and in the absence of Sternberg’s limitations, awarding those fees “is consistent with both the financial and non-financial purposes of the automatic stay that we emphasized in Sternberg.” Id. at 971-72.
II.
The majority errs in several respects, but the most significant of its mistakes is its failure to recognize that Sternberg controls this case. The majority characterizes the holding of Sternberg as “any fees a debtor incurs ‘in pursuit of a damage award’ are not covered” as “actual damages” under section 362(k)(1). Majority Op. at 970-71, quoting Sternberg, 595 F.3d at 947 (emphasis in original). But that is not the holding of Sternberg. Had the majority correctly applied the actual holding, the majority would have reversed the BAP.
A.
In Sternberg, we interpreted 11 U.S.C. § 362(k)(l), which allows an individual injured by a willful violation of the automatic stay “actual damages, including costs and attorneys’ fees.” We stated that the text of the statute did not define “actual damages,” which we considered an ambiguous phrase. Id. In order to define the term, we turned to Black’s Law Dictionary, which defines “actual damages” as “an amount awarded to compensate for a proven injury or loss.” Id., quoting Black’s Law DiCtionary 416 (8th ed.2004). The next sentence is the holding of Sternberg: “the proven injury [and thus, actual damages under section 362(k)(l) ] is the injury resulting from the stay violation itself.” Id. We later made clear that under our precedent the automatic stay “is designed to effect an immediate freeze of the status quo.” Id. at 948, quoting Hillis Motors, Inc. v. Hawaii Auto. Dealers’ Ass’n, 997 F.2d 581, 585 (9th Cir.1993).
In this case, the parties were returned to the status quo when Schwartz-Tallard received her property back from ASC. That occurred either on the date when the court ordered the property reconveyed, February 12, 2010, or when ASC actually reconveyed the property, March 3, 2010. See, e.g., In re Dawson, 390 F.3d 1139, 1151 (9th Cir.2004) (stating that “California rescission law empowers a court to *974 undo a transaction and restore the parties to the status quo ante. That is precisely what the bankruptcy court did here — the court undid the foreclosure and thereby placed the parties in the positions they occupied before the” stay violation). Once the status quo was re-established, the violation of the stay ended. Id. If Schwartz-Tallard’s “proven injury” is “the injury resulting from the stay violation itself,” Sternberg, 595 F.3d at 947, she can only recover damages suffered before the status quo was re-established by the recon-veyance of her property.
B.
The majority confuses this simple and correct analysis. The majority ignores the dictionary definition that underlies our holding in Sternberg, and proceeds to misinterpret the next sentence of our decision. Majority Op. at 969-70. In that sentence, we stated that “[o]nce the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for ‘actual damages’ under § 362(k)(l).” 595 F.3d at 947. The majority contorts this statement by emphasizing the phrase “pursuit of a damage award.” The majority distinguishes that “pursuit” from “defense” of a damages award. Majority Op. at 970-71. The majority argues that if not for ASC’s appeal, “Schwartz-Tallard’s litigation of this matter would have been complete.” Id. Citing the BAP, the majority also states that Sehwartz-Tallard “was forced to defend [the] appeal to validate the bankruptcy court’s. ruling,” and thus “Sehwartz-Tallard was not using the stay as a sword.” Id. at 970-71.
Contrary to the majority, the discussion of the “pursuit of a damage award” is not the “specific[] Molding]” of Sternberg, which is more properly characterized as I have stated above: “actual damages” is an amount awarded to compensate for “proven injury,” which in turn “is the injury resulting from the stay violation itself.” 595 F.3d at 947. In addition, the correct interpretation of the Sternberg sentence the majority focuses on compounds its error: “once the violation [of the automatic stay has ended, i.e., by March 3, 2010 at the latest] any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for ‘actual damages’ under § 362(k)(l).” Id. That should end the discussion and we should reverse.
A closer analysis of the facts here serves to illustrate further the majority’s error. In ASC’s appeal initiated on March 3, 2010, ASC did not attempt to reclaim Schwartz-Tallard’s property, so even if the district court vacated the damages award or held that ASC had not violated the automatic stay, Sehwartz-Tallard would not have to convey the property to ASC. Instead, ASC argued that the February 12, 2010 order awarding Sehwartz-Tallard damages for the stay violation was procedurally and legally improper. Whether or not Sehwartz-Tallard defended the appeal, she would have kept her property, maintaining the status quo from before ASC violated the automatic stay. ASC’s appeal could not disrupt the proper status quo.[1] Thus Sehwartz-Tallard was not “remedying the stay violation,” Majority Op. at 970-71, which had already been remedied and could not have been disturbed by ASC’s appeal.
It is true that if Sehwartz-Tallard had not defended the appeal, she would have *975 lost the damages properly awarded to her for ASC’s violation of the automatic stay. But the same was true in Sternberg: had Johnston, the debtor in that case, not sued the violators of the automatic stay in an adversary proceeding, he may not have ever received the damages award owed him. The adversary proceeding he filed was, just as the BAP stated in this case, “an extension of [his] efforts to enforce [his] automatic stay.” Schwartz-Tallard, 473 B.R. at 349. Nonetheless, we held in Sternberg that a party can only recover “actual damages,” “even though it could be said he is not made whole as a result.” 595 F.3d at 947.
Our Sternberg statement that the automatic “stay is a shield, not a sword,” id. at 948, does not change our holding denying damages to a party once it has been returned to the status quo, even if it has to take legal action to recover or defend damages properly owed. Under the logic of the majority opinion, it is impossible to understand how the statutory text of section 362(k)(l), which governs both this case and Sternberg, requires a bankruptcy court to award attorneys’ fees to Schwartz-Tallard, but bars a bankruptcy court from awarding attorneys’ fees to Johnston. It simply does not follow.
Sternberg controls this appeal. Our disposition should be quite simple under our holding in that case. Schwartz-Tallard was entitled to “actual damages” for ASC’s violation of the automatic stay. The violation of the stay ended when the status quo was re-established: when Schwartz-Tal-lard took back her property, which was March 3, 2010 at the latest. Any attorneys’ fees Schwartz-Tallard paid after that date are not “an amount awarded to compensate for proven injury or loss,” because the fees did not “result[] from the stay violation itself.” Sternberg, 595 F.3d at 947. I would reverse the BAP because of its misinterpretation of Sternberg.
III.
But strangely enough, even if the majority is correct that Sternberg is not controlling, we should still reverse the BAP. If Sternberg does not control, then there is no Ninth Circuit precedent governing this appeal, and thus there must be an independent legal basis to award Schwartz-Tallard the attorneys’ fees she seeks. The BAP apparently realized this and sought such an independent basis in its own precedent of In re Walsh, 219 B.R. 873 (9th Cir. BAP 1998). Schwartz-Tallard, 473 B.R. at 350. The majority cannot take refuge in Walsh, as it has correctly abandoned the BAP’s improper reliance on that decision because we overruled it in Stern-berg. Majority Op. at 971-72 n. 3. Of course, we all agree the BAP improperly relied on Walsh. But the legal sources on which the majority does rely are also not sufficient to grant Schwartz-Tallard attorneys’ fees.
A.
If Sternberg does not control, although I would hold it does, the majority then must independently address whether to award Schwartz-Tallard attorneys’ fees for her defense of the appeal from the bankruptcy court. We must start with the statute: here, we must interpret the statute that allows “an individual injured by any willful violation of a stay ... [to] recover actual damages, including costs and attorneys’ fees ...” 11 U.S.C. § 362(k)(l).
As we recognized in Sternberg, even though the statute specifically allows an individual injured by a stay violation to recover damages that include attorneys’ fees, “Congress legislates against the backdrop of the ‘American Rule,’ ” whereby “parties are to bear their own attorney’s fees.” 595 F.3d at 945-46, citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 533, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Because of that backdrop, we can *976 only grant attorneys’ fees when Congress uses “explicit statutory language.” Id. at 948. We require explicit language in a statute to award attorneys’ fees to a party even if the statute does explicitly award attorneys’ fees to another class of litigants. Id. at 948 (suggesting that explicit statutory language is required to award attorneys’ fees for “litigation attenuated from the actual bankruptcy”); Hardisty v. As-true, 592 F.3d 1072, 1076-77 (9th Cir.2010) (a statute that “creates an exception to the American rule” for a single circumstance does not “extend[] fee-shifting to” other related situations, and “[i]n the absence of clear statutory text authorizing fee-shifting, we decline to become a ‘roving authority’ awarding attorneys’ fees”) (citation omitted).
B.
In this case, therefore, the majority must decide whether to award attorneys’ fees to Schwartz-Tallard even though this award is not explicitly addressed in section 362(k)(l). “Such a bold departure from traditional practice” usually requires “explicit statutory language and legislative comment.” Fogerty, 510 U.S. at 534, 114 S.Ct. 1023; see also Fulfillment Servs., Inc. v. United Parcel Serv., Inc., 528 F.3d 614, 624 (9th Cir.2008) (explaining that “[h]ad Congress aspired to such a radical departure [from the American Rule], it no doubt would have so indicated with explicit language to that effect”).
Legislative history that “is at best ambiguous ... is clearly insufficient to alter the accepted meaning of the statutory term,” “[pjarticularly in view of the ‘American Rule’ that attorney’s fees will not be awarded absent ‘explicit statutory authority.’ ” Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep’t of Health & Human Resources, 532 U.S. 598, 607-08, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); accord Kwan Fun Wong v. Beebe, 732 F.3d 1030, 1044 (9th Cir.2013) (en banc) (holding that “legislative history cannot supply a ‘clear statement’”). In other areas where we require an “unequivocal ] expression]” of legislative intent, we do not generally allow “inferences from ... statutory purpose” to constitute that unequivocal expression. See, e.g., Alaska v. E.E.O.C., 564 F.3d 1062, 1066 (9th Cir.2009). Indeed, we have specifically held that when a party seeking attorneys’ fees argues that the “purpose” of a statute supports awarding attorneys’ fees, we will not award attorneys’ fees if the cited statutory purpose reduces to “competing policy arguments,” because “[s]uch a debate is not enough to overcome the absence of statutory text authorizing supersession of the American Rule.” Hardisty, 592 F.3d at 1079.
C.
The majority first claims that the “plain language of [section 362(k)(l) ] includes attorneys’ fees in the definition of actual damages,” and states that “there is no reason to contort that language” to avoid awarding attorneys’ fees. Majority Op. at 971. Though the majority is correct that the text of section 362(k)(l) allows attorneys’ fees as part of actual damages, it incorrectly concludes that this supports its holding. The question in this appeal is whether these attorneys’ fees are actual damages. The plain language of the statute does not state that attorneys’ fees expended after the status quo is re-established and thus the violation of the automatic stay is rectified are recoverable as actual damages. As we have recognized, if the plain text of a statute “creates an exception to the American rule,” we do not expand that text to award attorneys’ fees in a related circumstance not explicitly covered by the statute. Id. at 1076-77; see also Sternberg, 595 F.3d at 948 (refusing to award attorneys’ fees for “litigation attenuated from the actual bankruptcy” even though section 362(k)(l) specifically *977 authorizes some attorneys’ fees). There is not “explicit statutory language” in section 362(k)(l) to support the majority’s conclusion. Fogerty, 510 U.S. at 534, 114 S.Ct. 1023.
The majority’s only other legal basis for awarding these attorneys’ fees is that “the fees incurred defending ... an appeal meet [the] Congressional purpose” behind section 362(k)(l) in that its “decision here is consistent with both the financial and non-financial purposes of the automatic stay that we emphasized in Sternberg.” Majority Op. at 971. This inference from legislative purpose can never be “explicit statutory language and legislative comment,” Fogerty, 510 U.S. at 534, 114 S.Ct. 1023, and is thus insufficient to demonstrate Congressional intent to deviate from the American Rule. Alaska, 564 F.3d at 1066.
Indeed, the majority wrongly concludes that allowing Schwartz-Tallard to collect the attorneys’ fees is “consistent with both the financial and non-financial purposes of the automatic stay that we emphasized in Sternberg.” Majority Op. at 971.
Allowing attorneys’ fees would not further the financial goals of the automatic stay recognized in Sternberg. ASC was a creditor of Schwartz-Tallard. “We have never said the stay should aid the debtor in pursuing his creditors, even those creditors who violate the stay.” Sternberg, 595 F.3d at 948. If Schwartz-Tallard had not defended ASC’s appeal, she would never have been able to recover the damages her creditor owed her, but the “stay is a shield, not a sword.” Id. The economic purpose of the stay, to give Schwartz-Tallard time to put her finances back in order, would not be served if she were encouraged to continue to retrieve money from her creditor.
Nor does awarding attorneys’ fees further the noneconomic purpose of the stay recognized in Sternberg. “More litigation is hardly consistent with the concept of a ‘breathing spell.’ ” Id. By defending against ASC’s appeal, Schwartz-Tallard only created more litigation “attenuated from the actual bankruptcy.” Id.
I understand that my suggestion that Schwartz-Tallard could have simply not defended ASC’s appeal may seem unfair, but it is perfectly consistent with the “breathing spell” inherent in the automatic stay. It is also consistent with our recognition that the American Rule disfavors granting attorneys’ fees “even though it could be said [the debtor] is not made whole as a result.” Id. at 947.
Thus, I do not believe the supposed purposes of the automatic stay divined by the majority clearly weigh in favor of Schwartz-Tallard. Like many disputes over statutory purposes, the majority’s argument and what it calls Sternberg’s “policy analysis,” Majority Op. at 970 n. 2, “at most confronts us with competing policy arguments,” which are not enough to overcome the background “American Rule” that each party bears its own costs. Hardisty, 592 F.3d at 1079. Thus, even if Sternberg does not control the outcome of this case, I would still reverse the BAP because there is no “explicit statutory language and legislative comment” authorizing a departure from the traditional practice that Schwartz-Tallard should bear her own attorneys’ fees. Fogerty, 510 U.S. at 534, 114 S.Ct. 1023.
IV.
Although the majority errs in affirming the BAP, the majority is correct in its footnote to deem the BAP’s reliance on the decision in Walsh “improper.” Majority Op. at 971-72 n. 3.1 agree with the majority on this point for a fundamental reason: the BAP cannot rely upon any of its own precedent that we have overruled without creating serious constitutional problems.
*978 A.
The Constitution vests the “judicial power of the United States” in the Supreme Court and inferior courts. U.S. Const, art. Ill, § 1. The federal judges subject to Article III “hold their Offices during good Behavior,” which means they have lifetime tenure unless impeached, and their “Compensation [ ] shall not be diminished during their Continuance in Office.” Id.
Congress has the power to create certain other federal tribunals under its constitutionally delegated powers found in Article I. One type of federal tribunal acts as an “adjunct” to the Article III federal courts, a term used by the Supreme Court to describe the role of certain administrative agencies and the magistrate courts. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 77, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality), describing Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) (administrative agencies) and United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (magistrate courts). For instance, the magistrate courts are subject to the Article III district courts in the district in which they are located. “[T]he district court has plenary discretion whether to authorize a magistrate to hold an evidentiary hearing,” and “the magistrate acts subsidiary to and only in aid of the district court,” so that “the entire process takes place under the district court’s total control and jurisdiction.” Raddatz, 447 U.S. at 681,100 S.Ct. 2406.
But Congress does not have plenary authority to create federal tribunals. Congress cannot grant jurisdiction over cases that are rightfully within the “judicial power of the United States” described in Article III to an Article I tribunal without violating the Constitution and its separation of powers principle. N. Pipeline, 458 U.S. at 63-64, 102 S.Ct. 2858 (plurality). Likewise, if Congress vests “essential attributes” of the judicial power to an Article I adjunct that is not subject to searching review by an Article III court and that can issue binding and enforceable final judgments, the enacting law also violates the Constitution. Id. at 85-86, 102 S.Ct. 2858 (plurality).
Under the Bankruptcy Reform Act of 1978, Congress dramatically altered the existing bankruptcy system to modernize the bankruptcy laws. S. Rep. No. 95-989, at 1 (1978). Congress replaced the bankruptcy “referees” from the Bankruptcy Act of 1898 with bankruptcy “judges” with far more power to resolve bankruptcy disputes. Id. at 2-3. The Reform Act also authorized the judicial councils of the circuits to order the chief judge of the circuit to designate panels of three bankruptcy judges to hear appeals from judgments, orders, and decrees of each bankruptcy court. Pub.L. No. 95-598, title II, § 201, adding 28 U.S.C. § 160. These “bankruptcy appellate panels,” composed of bankruptcy judges, had jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts, as well as interlocutory judgments, orders, and decrees, if the panel granted leave. Id., title II, § 241, adding 28 U.S.C. § 1482. Under the 1978 Act, if a Judicial Council of a circuit authorized a BAP, all appeals from decisions of bankruptcy judges had to be heard by that BAP, unless all parties stipulated to have the appeal taken to the court of appeals. Thomas E. Carlson, The Case for Bankruptcy Appellate Panels, 1990 B.Y.U. L. Rev. 545, 546-47. Only the Judicial Councils of the First and Ninth Circuits authorized the BAP, and our circuit did so only for certain district courts. Id. at 547.
B.
In Northern Pipeline, the Supreme Court struck down the composition and *979 jurisdiction of the bankruptcy courts enacted under the 1978 Act. 458 U.S. at 77, 102 S.Ct. 2858 (plurality); id. at 91-92, 102 S.Ct. 2858 (Rehnquist, J., concurring). In that fractured decision, a four-justice plurality concluded that the bankruptcy courts as constituted exercised jurisdiction over cases properly assigned to the Article III federal courts under the Constitution, id. at 63-76, 102 S.Ct. 2858, and that the bankruptcy courts possessed too much power, with too little scrutiny by Article III federal courts, to be constitutionally acceptable adjuncts. Id. at 84-87, 102 S.Ct. 2858. Justices Rehnquist and O’Connor concurred with both propositions, though on narrower grounds. Id. at 90-91, 102 S.Ct. 2858 (Rehnquist, J., concurring) (without wholly addressing the general framework for adjudication of Congressional authority to create Article I courts, nonetheless agreeing that Article I tribunals cannot adjudicate certain types of common law actions and that the bankruptcy courts under the 1978 Reform Act were not constitutionally acceptable adjuncts because the only way for review by an Article III court was through “traditional appellate review”). Because the Court agreed that the decision involved an “unprecedented question of interpretation of [Article III],” it applied the rule only prospectively, and did not disturb previous orders of the bankruptcy courts. Id. at 87-88, 102 S.Ct. 2858 (plurality).
In light of Northern Pipeline, the Judicial Conference of the United States issued a model “Emergency Rule” that was adopted by all of the district courts in the Ninth Circuit. See In re Burley, 738 F.2d 981, 984 n. 2 (9th Cir.1984). Under the Rule, “the district courts referred] all bankruptcy cases and proceedings to bankruptcy judges, who make recommendations and enter certain orders and judgments on behalf of the district court, subject to later district court review.” Id.
The Bankruptcy Appellate Panel of the First Circuit reviewed the constitutionality of the BAP soon after Northern Pipeline, and concluded that although Northern Pipeline itself had not struck down review of bankruptcy decisions by the BAP, under the principles the Supreme Court recognized, BAP review “violates Article III’s command that the judicial power must be vested in Article III courts.” In re Dartmouth House Nursing Home, 30 B.R. 56, 62 (1st Cir. BAP 1983). The First Circuit affirmed, not because the BAP violated the Constitution, but instead because it held that the Emergency Rule promulgated by the Judicial Council of the First Circuit “had the implicit effect of withdrawing from [the BAP] their earlier conferred authority to hear appeals.” Massachusetts v. Dartmouth House Nursing Home, 726 F.2d 26, 29 (1st Cir.1984).
A few months later, we reviewed a decision from the BAP that was entered after Northern Pipeline. Burley, 738 F.2d at 985-87. We focused on the constitutionality of the BAP because unlike in the First Circuit, our order adopting the Emergency Rule “expressly provided] that the BAP shall” continue to hear appeals if the underlying bankruptcy order was entered before Northern Pipeline went into effect. Id. at 985 n. 3. Unlike the BAP of the First Circuit, we concluded that the bankruptcy appellate panels were not unconstitutional. This was because, unlike in Northern Pipeline, the Article III court of appeals, rather than the BAP, retained the “essential attributes of the judicial power.” Id. at 985. We may overturn the BAP’s decisions “more freely” than the district courts could overturn the bankruptcy courts under the 1978 Bankruptcy Act, and thus “effectively” review their decisions de novo. Id. at 985-86. We concluded that the BAP meets the constitutional requirements for an adjunct tribunal, because we review their decisions de novo, retain full *980 power to make final decisions, and retain control over the BAP through the discretionary choice to establish the panel by order of the Judicial Council of the Circuit. Id.
In response to Northern Pipeline, and soon after we had affirmed the constitutionality of the BAP in Burley, Congress passed the “Bankruptcy Amendments and Federal Judgeship Act of 1984.” Pub.L. No. 98-353. Under that statute, the BAP could only hear an appeal from a bankruptcy judge if “all the parties” consented, and the court of appeals had appellate jurisdiction over any final decision, judgment, order or decree issued by the BAP. Id. at § 104, inserting 28 U.S.C. § 158. In August 1984, our Judicial Council of the Circuit reestablished our BAP pursuant to the new statute, but no other circuit joined us. Thomas A. Wiseman, Jr., The Case Against Bankruptcy Appellate Panels, 4 Geo. Mason L.Rev. 1, 2 (1995).
Because we were the only circuit to create a BAP, Congress modified the bankruptcy appeals statute in 1994 to require that the judicial council of each circuit establish a BAP unless the council decided that it did not have sufficient judicial resources or that the creation of the BAP would create undue delay or increased costs. 28 U.S.C. § 158(b). Since 1994, we have been joined by the First, Sixth, Eighth and Tenth Circuits. Jonathan Remy Nash & Rafael I. Pardo, An Empirical Investigation into Appellate Structure and the Perceived Quality of Appellate Review, 61 Vand. L.Rev. 1745, 1757 (2008).
The Judicial Council of the Ninth Circuit has continued the BAP’s service after the 1994 statutory modifications. See Judicial Council of the Ninth Circuit, “Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit” (effective November 18, 1988; as amended May 4, 2010). Under current Ninth Circuit BAP practice, seven active bankruptcy judges from districts within the Ninth Circuit are authorized to serve on the BAP. Each appeal is heard by a panel of three judges, but no judge can hear an appeal originating from his or her district. Bankruptcy Appellate Panel of the Ninth Circuit Lit. Manual § III. An appeal from the bankruptcy court automatically goes to the BAP unless any party timely elects for the district court to hear the appeal. 28 U.S.C. § 158(c)(1). In certain exceptional bankruptcy cases filed after the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, parties can bypass both the BAP and district court and appeal directly to the Court of Appeals. See In re Blausey, 552 F.3d 1124, 1129-30 (9th Cir.2009). The BAP has jurisdiction over certain interlocutory orders. 28 U.S.C. §§ 158(a)(2), (a)(3) & (c)(1).
C.
Because the BAP is an Article I tribunal, we have consistently recognized that its decisions cannot bind us, or in fact any Article III court. In re Silverman, 616 F.3d 1001, 1005 n. 1 (9th Cir.2010) (“we treat the BAP’s decisions as persuasive authority given its special expertise in bankruptcy issues”) (emphasis added); In re Cardelucci, 285 F.3d 1231, 1234 (9th Cir.2002) (“this Court is not bound by a[BAP] decision”); Bank of Maui v. Estate Analysis, Inc., 904 F.2d 470, 472 (9th Cir. 1990) (stating that “it must be conceded that BAP decisions cannot bind the district courts themselves. As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction”). The BAP has also long recognized that our decisions are binding on them, rather than the other way around. See, e.g., In re Ball, 185 B.R. 595, 597-98 (9th Cir. BAP 1995) (“[w]e will not overrule our prior rulings unless a Ninth Cir *981 cuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings”).
Relatedly, we vacate any BAP decisions and judgments based on reasoning that we have overruled or rejected. See, e.g., In re Ransom, 302 Fed.Appx. 567 (9th Cir.2008) (“Under [a Ninth Circuit case] which came down after the bankruptcy appellate panel had ruled, the provisions of the confirmed plan have preclusive effect. [The Ninth Circuit case] controls. It expressly overruled the bankruptcy appellate panel decision in this case. Accordingly, the judgment of the bankruptcy appellate panel is vacated”) (citation omitted).
This discussion of the BAP’s subordinate role is not academic. The control we exercise over the BAP and its decisions is necessary to justify the very existence of that court. See, e.g., N. Pipeline, 458 U.S. at 87, 102 S.Ct. 2858 (plurality); id. at 91, 102 S.Ct. 2858 (Rehnquist, J., concurring). If an Article I tribunal were to “exercise jurisdiction over all matters related to those arising under the bankruptcy laws,” id. at 76, 102 S.Ct. 2858 (plurality), or infringe upon “essential attributes of the judicial power” without sufficient scrutiny by an Article III court, id. at 86-87, 102 S.Ct. 2858 (plurality), we would have to “emphatie[ally]” reassert “the integrity of the system of separated powers and the role of the Judiciary in that system” by striking down the offending Article I tribunal, even if its infringements “may seem innocuous at first blush” and only “chip away at the authority of the Judicial Branch.” Stern v. Marshall, — U.S. -, 131 S.Ct. 2594, 2620, 180 L.Ed.2d 475 (2011).
D.
In 1998, the BAP issued its decision in In re Walsh, which stated that “if appellate fees and costs are” not awarded, “then the injured party is not made whole,” and thus held that “[c]learly, fees and costs experienced by the injured party in resisting the [stay] violator’s appeal are part of the damages resulting directly from the stay violation” under the predecessor to section 362(k)(1). 219 B.R. 873, 878 (9th Cir. BAP 1998). In Sternberg, we specifically rejected this interpretation of the statute. 595 F.3d at 947 (“The Bankruptcy Appellate Panel, for example, seems to view ‘actual damages’ as requiring an award that returns a debtor to the position he was in before the stay violation occurred. See Beard v. Walsh (In re Walsh), 219 B.R. 873, 878 (9th Cir. BAP 1998) (rejecting an alternative reading of the statute under which, according to the BAP, ‘the injured party is not made whole’).... In contrast, we conclude that the plain meaning of ‘actual damages’ points to a different result”) (alterations omitted).
In the present appeal, the BAP cited and relied on Walsh’s precise holding, explaining that “Sternberg admittedly rejected the BAP’s determination in Walsh that § 362(k)’s predecessor, § 362(h), required an injured party to be made whole. At the same time, Sternberg did not invalidate Walsh’s finding that damages incurred on appeal are actual damages directly resulting from the stay violation itself.” Schwartz-Tallard, 473 B.R. at 350 n. 12.
In fact, we specifically overruled Walsh, even mentioning it by name. Sternberg, 595 F.3d at 947. We also specifically rejected the broader holding of Walsh that “actual damages” required “an award that returns a debtor to the position he was in before the stay violation occurred.” Id. The BAP was flatly wrong.
E.
The BAP’s citation to a precedent we specifically rejected is not only unacceptable under our precedent and its own deci- *982 sional law. Ransom, 302 Fed.Appx. at 567; In re Ball, 185 B.R. at 597-98. The reliance on such precedent is an attack on Article III of the Constitution. N. Pipeline, 458 U.S. at 86-87, 102 S.Ct. 2858 (plurality). For an Article I tribunal to rely on precedent that we have expressly rejected may infringe upon the “essential attributes of [our] judicial power.” Id.
This constitutional concern is particularly evident in the two classes of BAP decisions that we do not review on appeal. As Judge Norris observed, we do not review the BAP when the losing party does not appeal the adverse decision from the panel, and when the BAP decides a non-final bankruptcy order under its interlocutory jurisdiction. Burley, 738 F.2d at 989-93 (Norris, J., dissenting). If the BAP were to deviate from our authoritative decisions, and instead were to apply its own law in either of these two circumstances, it would very likely trammel essential attributes of our judicial power and thus violate the Constitution.
First, not all BAP cases are appealed by the losing party. Id. at 990-92 (Norris, J., dissenting). In those circumstances, there is “no direct article III control over [the] individual case[].” Id. at 992 (Norris, J., dissenting). If the BAP were not to follow federal law as stated in our decisions, and if the party subject to that decision were to lack the resources to rectify the BAP’s error, that party would be bound erroneously by an Article I tribunal.
Second and more worrisome, the BAP has jurisdiction over some interlocutory bankruptcy orders that we do not have appellate jurisdiction to review. Id. at 992-93 (Norris, J., dissenting); see also In re Lievsay, 118 F.3d 661, 663 (9th Cir. 1997) (per curiam) (dismissing an appeal from a BAP decision on an interlocutory order). If the BAP were to ignore our precedent in such a case, the losing party would have no recourse to rectify the error until the bankruptcy court issued a final order, and could be bound for years by this improper interpretation of federal law by an Article I tribunal. That, I suggest, would clearly violate the separation of powers doctrine by infringing upon our judicial power under Article III.
I do not contend that the BAP is consistently ignoring our opinions, or that it has done so in a case we have not reviewed. But all subordinate courts must follow the authoritative decisions of higher courts. See, e.g., United States v. McCalla, 545 F.3d 750, 753 (9th Cir.2008) (stating that to the extent the defendant seeks to “set aside or disregard United States Supreme Court precedent, we simply cannot accommodate him. As the Supreme Court has expressly stated, ‘it is this Court’s prerogative alone to overrule one of its precedents,’ ” citing State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997)). The BAP, which is a subordinate tribunal created by Congress and authorized by our Judicial Council of the Circuit, must be particularly careful to follow our precedents, and must never ignore them in favor of its own decisions, lest it infringe upon the essential attributes of our judicial power, created by the higher law of the United States Constitution. In such a case the correcting power would be action by the Judicial Council of the Circuit.
V.
The majority incorrectly holds that our decision in Sternberg does not control this ease. I am convinced to the contrary. Even if the majority were correct, however, it cites no persuasive basis for awarding attorneys’ fees to Schwartz-Tallard.
The BAP’s decision to ignore our binding precedent raises serious threats to the separation of powers. The majority, the BAP, and some out-of-circuit judges, cited at Majority Op. at 970 n. 2, fundamentally *983 disagree with our holding in Sternberg. If they are correct, the proper outlet for review of our decision is our court en banc or the Supreme Court. The BAP is a subordinate court, bound to follow our decisions, and as a three judge panel, we must follow prior panel precedent, whether or not the decisions were decided incorrectly or have been criticized by other courts. Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc). I dissent.

. Perhaps if ASC had sought to reclaim the property in its appeal, and thus to take Schwartz-Tallard’s property in violation of the automatic stay, Sehwartz-Tallard would be entitled to attorneys’ fees for her defense of that appeal. But that was not the basis for ASC’s appeal, and those are not the facts of this case.