**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

IN RE: IRENE MICHELLE SCHWARTZ-
TALLARD,

*Debtor*,

AMERICA'S SERVICING COMPANY,
*Appellant*,

v.

IRENE MICHELLE SCHWARTZ-
TALLARD,

*Appellee*.

No. 12-60052

BAP No.
11-1429

ORDER AND
OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Pappas, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
March 14, 2014—San Francisco, California

Filed August 29, 2014

Before: J. Clifford Wallace and Ronald M. Gould, Circuit
Judges, and Paul C. Huck, Senior District Judge.[*]

---

[*] The Honorable Paul C. Huck, Senior District Judge for the U.S.
District Court for the Southern District of Florida, sitting by designation.

Opinion by Judge Huck;
Dissent by Judge Wallace

**SUMMARY**[**]

**Bankruptcy**

The panel filed an order withdrawing its previous opinion
and dissent and filing a superseding opinion and dissent
affirming the Bankruptcy Appellate Panel's reversal of the
bankruptcy court's decision and holding that a bankruptcy
debtor was not precluded from recovering, as damages,
attorneys' fees for defending against a creditor's appeal of a
finding that the creditor violated the automatic stay.

The panel distinguished *Sternberg v. Johnston*, 595 F.3d
937 (9th Cir. 2010), which held that a debtor's attorneys' fees
for work on an adversary proceeding seeking damages for a
stay violation were not actual damages and thus were not
recoverable under 11 U.S.C. § 362(k)(1) (providing that "an
individual injured by any willful violation of a stay . . . shall
recover actual damages, including costs and attorneys' fees").
The panel held that the attorneys' fees in this case were
incurred for a different purpose than those in *Sternberg* and
fell within the meaning of "actual damages" in § 362(k)(1)
because they related to the debtor's enforcing of the
automatic stay and remedying of the stay violation. The
panel further wrote that the BAP's use of precedent expressly
rejected in *Sternberg* was improper.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Dissenting, Judge Wallace wrote that *Sternberg* controlled and required reversal. He also wrote that the BAP's reliance upon one of its own cases, notwithstanding the Ninth Circuit's previous rejection of the statement of law at issue, was an attack on Article III of the Constitution.

## COUNSEL

Andrew Martin Jacobs (argued), Snell & Wilmer L.L.P., Tucson, Arizona; Kelly Harrison Dove, Snell & Wilmer L.L.P., Las Vegas, Nevada, for Appellant.

Christopher P. Burke (argued), Chris P. Burke & Associates, Las Vegas, Nevada, for Appellee.

## ORDER

The opinion and dissent in the above-captioned matter filed on April 16, 2014 and published at 751 F.3d 966 are **WITHDRAWN**. The superseding opinion and dissent shall be filed concurrently with this order.

The parties shall have fourteen (14) days from entry of the superseding opinion to file petitions for rehearing or petitions for rehearing en banc in the above-captioned matter.

**IT IS SO ORDERED.**

**OPINION**

HUCK, District Judge:

The issue on appeal is whether a debtor in bankruptcy can recover, as damages, attorneys' fees for defending against a creditor's appeal of a finding that the creditor violated the automatic stay. The Bankruptcy Code provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). We recently held that a debtor's attorneys' fees for work on an adversary proceeding seeking damages for a stay violation were not actual damages under § 362. *Sternberg v. Johnston*, 595 F.3d 937, 948 (9th Cir. 2010). In *Sternberg*, we stated that "the proven injury is the injury resulting from the stay violation itself. Once the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)." *Id.* at 947.

In this case, we are asked to apply § 362(k)(1) to a set of facts different than that addressed in *Sternberg*. Unlike in *Sternberg*, where a debtor filed an adversary proceeding in pursuit of damages, the debtor in this case is seeking attorneys' fees incurred in defense of America's Servicing Company's ("ASC") appeal of the bankruptcy court's determination that ASC had violated the automatic stay. Because the attorneys' fees at issue in this case were incurred for a different purpose than those in *Sternberg*, *Sternberg* does not prohibit the awarding of the attorneys' fees at issue here. Moreover, following the reasoning in *Sternberg*, the fees at issue in this case fall within the meaning of "actual damages" in § 362(k)(1). Therefore, we affirm the

Bankruptcy Appellate Panel ("BAP") and grant Schwartz-Tallard's request for an award of attorneys' fees.

## I. FACTS

ASC serviced a mortgage on Schwartz-Tallard's home. On March 30, 2007, Schwartz-Tallard filed for Chapter 13 bankruptcy, but continued to make mortgage payments. ASC believed Schwartz-Tallard had fallen behind on her payments, and moved for relief from the automatic stay to foreclose on the property. On April 6, 2009, following ASC's motion, the bankruptcy court lifted the automatic stay. Schwartz-Tallard moved to reinstate the stay and the bankruptcy court orally granted the motion on May 13, 2009. ASC did not appear at the hearing. On May 20, 2009, ASC caused Schwartz-Tallard's home to be sold at a trustee's sale. It was not until June 3, 2009—after the property had been sold—that the bankruptcy court entered the written order reinstating the stay.

On June 9, 2009, Schwartz-Tallard filed a motion asserting that ASC had violated the automatic stay in her Chapter 13 bankruptcy, and seeking sanctions. Schwartz-Tallard presented evidence that she was current on her mortgage payments through March 2009, but that ASC returned her April 2009 payment with a letter stating that her loan was in foreclosure. Schwartz-Tallard also established that when the bankruptcy court reinstated the stay, she sent ASC the payments for April and May 2009, and enclosed a letter notifying ASC of the stay's reinstatement. Inexplicably, ASC rejected the payments, still asserting that the property was in foreclosure.

On February 10, 2010, the bankruptcy court ruled that ASC had violated the stay and awarded Schwartz-Tallard damages, including attorneys' fees and punitive damages. The bankruptcy court ordered that the property be put back into Schwartz-Tallard's name within two days of the order (by February 12, 2010). On March 2, 2010, ASC appealed that order to the United States District Court for the District of Nevada. The next day, on March 3, 2010, ASC reconveyed the property to Schwartz-Tallard, thereby, according to ASC, remedying the stay violation. On appeal, the district court affirmed the bankruptcy court's finding that ASC had violated the stay, and largely affirmed the bankruptcy court's damages award.[1]

Schwartz-Tallard then moved to recover the attorneys' fees incurred in litigating ASC's appeal to the district court. These are the fees at issue in this appeal. The bankruptcy court denied the motion, and Schwartz-Tallard appealed to the BAP. The BAP held that Schwartz-Tallard's attorneys' fees for defending ASC's appeal were actual damages under § 362(k)(1). ASC now appeals.

---

[1] The district court reversed and remanded the bankruptcy court's award of attorneys' fees, but not because it found attorneys' fees were not warranted by § 362(k)(1). Rather, it remanded for the bankruptcy court to make a determination of actual fees expended or charged in connection with enforcing the stay and remedying the stay violation. *America's Servicing Co. v. Schwartz-Tallard*, 438 B.R. 313, 321 (D. Nev. 2010). These are not the attorneys' fees at issue in the instant appeal.

## II. ANALYSIS

### A. Standard of Review

We review the BAP's conclusions of law and statutory construction *de novo*, meaning we independently review the decision of the bankruptcy court. *In re Su*, 290 F.3d 1140, 1142 (9th Cir. 2002).

### B. *Sternberg*

The Bankruptcy Code provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). However, in *Sternberg* we held that not *all* attorneys' fees associated with a stay violation are recoverable under § 362(k)(1).

In *Sternberg*, the debtor in bankruptcy's ex-wife sought to have a state court hold the debtor in contempt for non-payment of spousal support. 595 F.3d at 940. The state court was aware of the debtor's bankruptcy and had not yet resolved the issue of whether the contempt proceedings violated the stay. Nonetheless, the state court entered an order holding the debtor in violation of the divorce decree, and granting a specific monetary judgment for the debtor's ex-wife. *Id.* at 941. The debtor sought relief from the order in two ways: by filing a motion asking the bankruptcy court to vacate the state court's stay-violating order, and by initiating an adversary proceeding against his ex-wife and her counsel for not acting to remedy the state court's order. *Id.* The bankruptcy court granted the debtor's motion and vacated the state court order. *Id.* at 942. The adversary proceeding later went to trial in the bankruptcy court to

determine whether the debtor's ex-wife and her counsel had violated the stay, and, if so, the appropriate damages. *Id.* The bankruptcy court ruled in favor of the debtor's ex-wife and her counsel; the debtor appealed; the district court reversed and found that the ex-wife and her counsel had violated the stay. *Id.* On remand, the bankruptcy court awarded damages, and the debtor's ex-wife's counsel appealed the damages award. *Id.*

In *Sternberg*, we reviewed the damages award and held that the debtor could not recover attorneys' fees incurred prosecuting the adversary proceeding under §362(k)(1). *Id.* at 948. We stated that "the proven injury is the injury resulting from the stay violation itself. Once the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)." *Id.* at 947. The outcome, we held, was consistent with the "financial and non-financial" purposes of the stay. *Id.* The financial purpose of the stay, as we explained, is to give the debtor time to put his finances back in order, allowing creditors to be satisfied to the extent possible and preventing creditors from pursuing their own remedies at each other's expense. *Id.* at 948. The stay is "meant to help the debtor deal with his bankruptcy for the benefit of himself and his creditors alike. We have never said the stay should aid the debtor in pursuing his creditors, even those creditors who violate the stay. The stay is a shield, not a sword." *Id.* The non-financial goal of the stay is to create a "breathing spell" for the debtor, and we reasoned that more litigation was not consistent with that end. *Id.* Therefore, we concluded that "a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available under the American Rule." *Id.*

The *Sternberg* decision overruled prior BAP precedent holding that "actual damages" under § 362(k)(1) were meant to return the debtor to the position the debtor was in before the stay violation, and that "'the attorneys' fees and costs incurred in prosecuting an adversary proceeding arising from a violation of the automatic stay are recoverable.'" *Id.* at 947, citing *Beard v. Walsh* (*In re Walsh*), 219 B.R. 873, 878 (9th Cir. B.A.P. 1998); *Havelock v. Taxel* (*In re Pace*), 159 B.R. 890, 900 (9th Cir. B.A.P. 1993), vacated in part on other grounds by 67 F.3d 187 (9th Cir. 1995).[2]

## C. Analysis

The issue here is whether the attorneys' fees Schwartz-Tallard seeks relate to her "enforcing the automatic stay and remedying the stay violation," *Sternberg*, 595 F.3d at 940, or whether they are more akin to prosecuting an adversary proceeding in pursuit of a claim for damages. Schwartz-Tallard's defense of ASC's appeal differs fundamentally from the independent damages action in *Sternberg*. Here, unlike in *Sternberg*, ASC appealed not only the damages award, but importantly, the bankruptcy court's

---

[2] Schwartz-Tallard asks us to re-consider the wisdom of *Sternberg*, arguing that it is an outlier among the circuits and has received substantial criticism for both its statutory construction and policy analysis. *See In re Repine*, 536 F.2d 512, 522 (5th Cir. 2008) (awarding attorneys' fees under section 362(k) to a debtor seeking damages); *In re Webb*, 472 B.R. 665, *16 (B.A.P. 6th Cir. 2012) (unpublished) (same); *In re Duby*, 451 B.R. 664, 676-77 (B.A.P. 1st Cir. 2011) (same and criticizing *Sternberg*). However, we are bound by the decisions of prior panels so long as those decisions cannot be fairly distinguished. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *In re Southern California Sunbelt Developers, Inc.*, 608 F.3d 456, 464 (9th Cir. 2010) (distinguishing *Sternberg* and holding that it does not bar a fee award under a different bankruptcy statute).

determination that the stay had been violated. *In re Schwartz-Tallard*, 473 B.R. 340, 349 (B.A.P. 9th Cir. 2012) ("[Schwartz-Tallard] was required to defend the bankruptcy court's decision, not only to protect the award of damages, but also to uphold the bankruptcy court's determination that ASC had, indeed, violated the stay.")[3]

*Sternberg* specifically held that any fees a debtor incurs "*in pursuit of a damage award*" are not covered. 595 F.3d at 947 (emphasis added). But here, the debtor was not pursuing a damage award—she had already been awarded damages for the breach of the stay. She was, however, "remedying the stay violation," within the meaning of *Sternberg. Id.* at 940. But for ASC's appeal, Schwartz-Tallard's litigation of this matter would have been complete. Even though the property was reconveyed to Schwartz-Tallard before the parties litigated the appeal, the appeal put not only the damages

---

[3] This fact was made clear throughout the appeal from the bankruptcy court and in this proceeding. In ASC's brief on appeal of the stay violation order, it argued that "the foreclosure sale . . . was not a violation of the automatic stay." Brief of ASC at 8, *In re Schwartz-Tallard*, No. 10-cv-00292 (D. Nev. 2010). Similarly, in the district court, counsel for ASC opened his argument by stating that "If the Court decides there was a stay and my client violated it . . . ." Transcript of Evidentiary Hearing at 7, *In re Schwartz-Tallard*, No. 10-cv-00292 (D. Nev. 2010). In its published order, the district court noted and rejected these contentions, holding that the foreclosure sale of Schwartz-Tallard's home "was an immediate violation of the stay" and ASC's contrary position "was not a persuasive argument." *In re Schwartz-Tallard*, 438 B.R. 313, 319–20 (D. Nev. 2010). ASC's counsel conceded that its appeal included an attempt to have the stay violation set aside during oral argument in front of our panel. Recording of Oral Argument at 7:03–7:35, *ASC v. Schwartz-Tallard*, No. 12-60052 (9th. Cir. 2014). To the extent that ASC now argues otherwise, *see* Appellant's Petition for Rehearing and Rehearing En Banc at 3, 9, *ASC v. Schwartz-Tallard*, No. 12-60052 (9th Cir. 2014), we find those contentions unavailing.

award, but importantly the finding that the stay had been violated in jeopardy. As the BAP noted, Schwartz-Tallard "was forced to defend [the] appeal to validate the bankruptcy court's ruling that ASC had violated the stay, and to preserve her right to collect the pre-remedy damages awarded by the bankruptcy court." *In re Schwartz-Tallard*, 473 B.R at 350. In other words, unlike in *Sternberg*, Schwartz-Tallard was not using the stay as a sword, but as a shield from stay violation. *Sternberg*, 547 F.3d at 948.[4]

---

[4] The dissent argues that ASC did not attempt to reclaim Schwartz-Tallard's home in its appeal. Dissent at 22–25. This is correct as a description of ASC's legal strategy and literal argument. But that fact does not bear the weight that the dissent's analysis places on it. Because ASC explicitly challenged the finding that the stay existed at the time of its foreclosure, and challenged whether its foreclosure sale had violated any stay, Schwartz-Tallard's defense of that action was a continuation of her efforts to "enforce the automatic stay." *See Sternberg*, 595 F.3d at 948. As such, she may recover fees under both § 362(k)(1) and *Sternberg*.

As *Sternberg* recognized, "Without a doubt, Congress intended § 362(k)(1) to permit recovery as damages of fees incurred to prevent violation of the automatic stay." 595 F.3d at 946. Preventing violation of the automatic stay should contain at least litigation against stay violators in the bankruptcy courts to obtain a declaration of stay violation, and the defense of findings of stay violation on appeal. If we apply the dissent's theory of *Sternberg*, efforts in the bankruptcy court to enforce the stay would be ineffective, because a stay violator could seek to avoid a finding of stay violation by filing an appeal, which the debtor would then be unable to defend for lack of attorneys' fees.

We read *Sternberg* in light of its plain language: Fees are available for "efforts to enforce the automatic stay," which logically includes defending appeals that challenge a finding of stay violation, but fees are not available for a debtor in pursuit of damages, which Schwartz-Tallard was not engaged in here. *See* 595 F.3d at 948.

Because we hold that *Sternberg* does not apply to a situation where a debtor defends herself when a creditor who had violated the automatic stay appeals that finding, Schwartz-Tallard is entitled to recover her attorneys' fees as "actual damages" under 11 U.S.C. § 362(k)(1). The plain language of the statute includes attorneys' fees in the definition of actual damages, and in the absence of *Sternberg*'s limitations, there is no reason to contort that language to avoid this result. As we said in *Sternberg*, "Without a doubt, Congress intended § 362(k)(1) to permit recovery as damages fees incurred to prevent violation of the automatic stay." 595 F.3d at 946. Where, as here, the debtor is defending an appeal that seeks to eliminate the finding that the stay was violated, we hold that the fees incurred defending such an appeal meet that Congressional purpose and are included in § 362(k)(1)'s definition of actual damages.

Our decision here is consistent with both the financial and non-financial purposes of the automatic stay that we emphasized in *Sternberg*. As to the financial purpose of preserving a debtor's resources for creditors, ASC's appeal compelled Schwartz-Tallard to spend money on litigation that would otherwise have been available to creditors. Awarding her attorneys' fees under § 362(k)(1) eliminates this problem. As to the non-financial goal of allowing the debtor time to reorganize her finances, we noted in *Sternberg* that "[m]ore litigation is hardly consistent with the concept of a 'breathing spell.'" 595 F.3d at 948. Here, unlike in *Sternberg*, the additional litigation resulted from ASC's continued attempts to justify its stay-violating behavior—not from the debtor's conduct. Awarding Schwartz-Tallard fees as damages under § 362(k)(1) furthers the non-economic goal of the automatic

stay—it should act to deter stay violators from continuing to disturb the breathing spell the stay aims to create.**⁵**

## III. CONCLUSION

Because the debtor was not pursuing a damages award, but rather defending ASC's appeal of a previous finding of stay violation and thereby "remedying the stay violation," *Sternberg*, 595 F.3d at 940, *Sternberg* does not prohibit the awarding of attorneys' fees at issue here. The decision of the BAP, which reversed and remanded the bankruptcy court's decision denying Schwartz-Tallard's request for an award of attorneys' fees, is

**AFFIRMED.**

---

**⁵** In reaching its conclusion, the BAP relied in part on *In re Walsh*, 219 B.R. 873 (B.A.P. 9th Cir. 1998). *See In re Schwartz-Tallard*, 473 B.R. 340, 350 (B.A.P. 9th Cir. 2012). However, in *Sternberg*, we rejected *Walsh*'s reading of § 362(k)(1) to mean that the "actual damages" available to the injured party would necessarily make the injured party whole. *Id.* at 878. *Walsh*'s holding—that fees expended resisting the stay violator's appeal were available under § 362(k)(1) as actual damages—was based in part upon the reasoning we later expressly rejected in *Sternberg*. Therefore, the BAP's use of *Walsh* to explain the proper application of § 362(k)(1) is improper in view of *Sternberg*. *See In re Burley*, 738 F.2d 981, 986 (9th Cir. 1984) (holding that the role of the BAP is as an adjunct to the circuit court, and explaining the importance of that relationship to the constitutionality of the BAP). In reaching our conclusion today, we do not rely on the partially abrogated *Walsh* decision.

WALLACE, Circuit Judge, dissenting:

I respectfully dissent. Our decision in *Sternberg*, properly read, controls this case and requires reversal. However, even if it did not control, we should still reverse.

Although these errors are significant, they solely affect the outcome of this case. More troubling is the BAP's decision to rely upon one of its own cases, notwithstanding the fact that we had previously rejected the statement of law at issue. The implications of such cavalier disregard by the BAP for its subordinate status within the federal judiciary are far-ranging, and merit much greater attention than the majority bestows on them.

I.

Schwartz-Tallard voluntarily petitioned for Chapter 13 bankruptcy in March 2007 in the Bankruptcy Court for the District of Nevada. In February 2009, America's Servicing Company (ASC), a creditor of Schwartz-Tallard's, contended that she failed to make payments on a note held by ASC. ASC moved the bankruptcy court to lift the automatic stay so it could foreclose upon property Schwartz-Tallard owned in which ASC held a security interest. On April 6, 2009, the bankruptcy court vacated the automatic stay so ASC could foreclose on the property.

Schwartz-Tallard moved to reinstate the stay for the property on May 6, 2009. She argued she had not failed to make payments on the note so the lifting of the stay was erroneous, and requested swift relief from the bankruptcy court because ASC had announced it would sell the property on May 20, 2009. On May 13, 2009, the bankruptcy court

held a hearing and orally granted Schwartz-Tallard's motion to reinstate the stay as to the property. The bankruptcy court did not enter a written order memorializing the reinstatement of the stay (the Reinstatement Order), however, until June 3, 2009. In the interim, ASC sold the property in a foreclosure sale on May 20, 2009.

On June 9, 2009, Schwartz-Tallard moved the bankruptcy court to sanction ASC for the sale, which had occurred despite the oral order reinstating the stay. The bankruptcy court heard the motion on January 7, 2010. During the long period between when the Reinstatement Order was entered on the docket and the hearing on the sanctions motion, ASC did not convey the property back to Schwartz-Tallard. At the hearing, the bankruptcy court ordered the property returned to Schwartz-Tallard, and ASC acceded. The bankruptcy court ordered sanctions imposed for a number of reasons, including ASC's improper motion in February 2009 to set aside the automatic stay, ASC's sale of the property on May 20, 2009 despite the oral grant of reinstatement on May 13, and for ASC's failure to reconvey the property after the Reinstatement Order was entered onto the docket. The bankruptcy court also awarded Schwartz-Tallard attorneys' fees and fees for emotional damages. The bankruptcy court entered an order on February 17, 2010 directing the property to be put back to Schwartz-Tallard's name and memorializing the sanctions and attorneys' fees (Conveyance and Sanctions Order).

On March 2, 2010, ASC filed a notice of appeal from the Conveyance and Sanctions Order. ASC finally put the property back in Schwartz-Tallard's name on March 3, 2010.

ASC filed its appellate brief in the district court on May 10, 2010, in which ASC attacked the Conveyance and Sanctions Order on five grounds. First, ASC argued that the bankruptcy court's oral order of May 13, 2009 did not take effect immediately, so "any sanctions based upon [the bankruptcy court's conclusion in the Conveyance and Sanctions Order that the foreclosure sale of May 20, 2009 violated the stay] must be reversed." Second, ASC argued that it had not been required to undo the foreclosure sale and reconvey the property back to Schwartz-Tallard until the hearing on January 7, 2010, so the bankruptcy court's "award of damage attributed to th[e] erroneous legal conclusion [that ASC had continued to violate the automatic stay from May 13, 2009 to when it returned the property to Schwartz-Tallard] must be reversed." Third, ASC argued that the damages the bankruptcy court awarded to Schwartz-Tallard "were not properly awarded under [Federal Rule of Bankruptcy Procedure] 9011," which governed the sanctions award. Fourth, ASC argued that the amount of attorneys' fees awarded to Schwartz-Tallard was unreasonable. Fifth, ASC argued that the bankruptcy court erred in awarding Schwartz-Tallard emotional damages.

Critically, all five of these arguments attacked the amount and propriety of the sanctions and fees awarded to Schwartz-Tallard. ASC never argued that Schwartz-Tallard actually defaulted on her note, as it had originally argued in February 2009. ASC did not attack the validity of the Reinstatement Order. That meant ASC never challenged the bankruptcy court's conclusion in the Conveyance and Sanctions Order that the property should be conveyed back to Schwartz-Tallard. If ASC's appeal had been wholly successful, it would not have owed Schwartz-Tallard any money. But ASC would not have retaken Schwartz-Tallard's property.

Schwartz-Tallard filed an answering brief on June 3, 2010. In her brief, she stated that ASC's "main argument is that the Bankruptcy Court did not follow the proper procedure in awarding sanctions and damages under F.R.B.P. 9011." She did not defend the bankruptcy court's judgment ordering the property returned to her.

The district court issued an order on September 14, 2010. In that order, the court affirmed most of the Conveyance and Sanctions Order, but rejected some of the attorneys' fees calculations made by the bankruptcy court. On remand, the bankruptcy court reassessed those attorneys' fees.

On February 16, 2011, Schwartz-Tallard moved for additional attorneys' fees before the bankruptcy court. She argued that ASC owed her $10,103.00 for attorneys' fees she incurred by defending ASC's appeal of the Conveyance and Sanctions Order. In an oral hearing on July 12, 2011, the bankruptcy court rejected her motion, holding that Schwartz-Tallard was "not entitled to [those] fees for the sole reason that I believe that *Sternberg* [*v. Johnston*, 595 F.3d 937 (9th Cir. 2010)] precludes the award of attorneys fees on appeal." The bankruptcy court continued that because "the wrongful act," namely ASC's failure to return her property in contravention of the Reinstatement Order, "stopped before the appeal [] the attorneys fees don't continue through there." Though the bankruptcy court stated its belief that *Sternberg* was wrongly decided, and that Schwartz-Tallard should receive these fees, "I'm bound by what I believe *Sternberg* says." The bankruptcy court entered a written order on July 26, 2011.

In *Sternberg*, we considered the scope of "actual damages" under 28 U.S.C. § 362(k)(1). Section 362(k)(1)

allows "an individual injured by any willful violation of [the automatic] stay . . . [to] recover actual damages, including costs and attorneys' fees . . ." We concluded that "actual damages" does not include attorneys' fees expended by the debtor for the prosecution of an adversary proceeding to recover damages suffered from a violation of the stay. *Sternberg*, 595 F.3d at 945–48.

Schwartz-Tallard appealed the bankruptcy court's denial of the $10,103.00 in appellate attorneys' fees she sought. The bankruptcy court had suggested at the July 12 hearing that the appeal be taken directly to this court under 28 U.S.C. § 158(d)(2), so we could potentially reconsider *Sternberg*. The bankruptcy court rethought that suggestion, though, and denied Schwartz-Tallard's request for direct certification to our court, presumably because the court concluded that *Sternberg* was controlling.

Schwartz-Tallard's appeal proceeded before the Bankruptcy Appellate Panel (BAP). In her brief, Schwartz-Tallard offered two possible distinctions of *Sternberg*, but mostly focused on her argument that our decision in that case "ha[d] been sharply criticized by other courts." ASC disagreed with Schwartz-Tallard's distinctions, but pointed out that Schwartz-Tallard had basically "concede[d] that *Sternberg* is binding." Thus far, the bankruptcy court and even the parties seemed to agree that Schwartz-Tallard could not recover attorneys' fees for defending ASC's appeal of the Conveyance and Sanctions Order under our decision in *Sternberg*.

But then the BAP issued its decision. *In re Schwartz-Tallard*, 473 B.R. 340 (B.A.P. 9th Cir. 2012). The BAP first attempted to distinguish Schwartz-Tallard's appeal from

*Sternberg*. The BAP concluded that the defense of an opposing party's appeal "is fundamentally different" from the affirmative adversary proceeding action filed by the debtor in *Sternberg*. *Schwartz-Tallard*, 473 B.R. at 349. Unlike in *Sternberg*, said the BAP, Schwartz-Tallard was "not using the automatic stay as a sword to pursue damages from ASC." *Id.*

After attempting to distinguish this case from *Sternberg*, the BAP held that Schwartz-Tallard is entitled to attorneys' fees for her defense of ASC's appeal, because the defense of the appeal "was consistent with the goals of the automatic stay identified by the court in *Sternberg*," and ASC's appeal "deprive[d] [Schwartz-Tallard] of the benefits of her automatic stay," so her "defense of the bankruptcy court's decision was an extension of her efforts to enforce her automatic stay." *Id.* The BAP suggested that Schwartz-Tallard was entitled to attorneys' fees because ASC's stay violation was not remedied until ASC lost its appeal. *Id.* at 350 ("[o]f course, in *Sternberg*, the point at which the stay violation had been 'remedied' was clear. . . . In contrast, here, while the Property was finally reconveyed to [Schwartz-Tallard] the day after ASC filed its notice of appeal, [Schwartz-Tallard] was forced to defend that appeal to validate the bankruptcy court's ruling"). The BAP also relied on its prior decision of *In re Walsh*, where it held that "[c]learly, fees and costs experienced by an injured party in resisting the [stay] violator's appeal are part of the damages resulting directly from the stay violation." *Id.*, *quoting In re Walsh*, 219 B.R. 873, 878 (B.A.P. 9th Cir. 1998).

The majority now affirms the BAP. The basic structure of the majority's opinion is the same as the BAP's. First, the majority attempts to distinguish *Sternberg*. The majority states that there we "specifically held" "that any fees a debtor

incurs '*in pursuit of a damage award*' are not covered" by section 362(k)(1). Majority Op. at 10. Here, however, the majority asserts that Schwartz-Tallard "was not pursuing a damage award," was "remedying the stay violation," and "was not using the stay as a sword." Majority Op. at 10–11. The majority then explains why Schwartz-Tallard is entitled to attorneys' fees: it believes awarding these fees is consistent with the plain language of section 362(k)(1), and in the absence of *Sternberg*'s limitations, awarding those fees "is consistent with both the financial and non-financial purposes of the automatic stay that we emphasized in *Sternberg*." *Id.* at 12–13.

## II.

The majority errs in several respects, but the most significant of its mistakes is its failure to recognize that *Sternberg* controls this case. The majority characterizes the holding of *Sternberg* as "any fees a debtor incurs '*in pursuit of a damage award*' are not covered" as "actual damages" under section 362(k)(1). Majority Op. at 10–12, *quoting Sternberg*, 595 F.3d at 947. But that is not the *holding* of *Sternberg*. The holding of *Sternberg* is that "actual damages" are "an amount awarded to compensate for a proven injury or loss." *Id.* at 947. Only attorneys' fees "related to enforcing the automatic stay and remedying the stay violation" constitute actual damages. *Id.* at 940.

On March 3, 2010, ASC returned the property to Schwartz-Tallard. That ended and remedied the violation of the automatic stay. On May 10, 2010, ASC filed its opening brief in the appeal. By not seeking to retake Schwartz-Tallard's property then, ASC waived its right to do so. By May 10, 2010, at the latest, it was both evident to Schwartz-

Tallard and legally true that ASC's appeal was not related to enforcing the automatic stay or remedying the stay violation. Instead, the only possible result of Schwartz-Tallard's defense of ASC's appeal was to maintain the sanctions she had been awarded by the bankruptcy court. Attorneys' fees expended to that end are not actual damages under *Sternberg*.

## A.

In *Sternberg*, we interpreted 11 U.S.C. § 362(k)(1), which allows an individual injured by a willful violation of the automatic stay "actual damages, including costs and attorneys' fees." We determined that a debtor "can recover as actual damages only those attorney fees related to enforcing the automatic stay and remedying the stay violation." 595 F.3d at 940. We stated that section 362(k)(1) did not define "actual damages," which we considered an ambiguous phrase. *Id.* In order to define the term, we turned to Black's Law Dictionary, which defines "actual damages" as "an amount awarded to compensate for a proven injury or loss." *Id.*, *quoting* BLACK'S LAW DICTIONARY 416 (8th ed. 2004). The next sentence is the holding of *Sternberg*: "the proven injury [and thus, actual damages under section 362(k)(1)] is the injury resulting from the stay violation itself." *Id.* We later made clear that under our precedent the automatic stay "is designed to effect an immediate freeze of the *status quo*." *Id.* at 948, *quoting Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993).

In this case, the parties were returned to the status quo when Schwartz-Tallard received her property back from ASC. That occurred on the date ASC reconveyed the property, March 3, 2010. Once the status quo was re-

established, the violation of the stay ended. *Id.*; *Hillis*, 997 F.2d at 585.

ASC appealed the Conveyance and Sanctions Order that required it to return the property to Schwartz-Tallard on March 2, 2010. In that appeal, ASC conceivably could have argued that the Reinstatement Order was erroneous, and that the property should revert. But it did not do so. In its appeal brief to the district court, filed on May 10, 2010, ASC sought only to reduce or reverse the award of damages owed to Schwartz-Tallard. By failing to attack the Reinstatement Order or otherwise argue that Schwartz-Tallard had defaulted on her note and was not entitled to the property, ASC waived any argument that could have led to retaking the property under the Nevada Local Rules and the Federal Rules of Bankruptcy Procedure. D. Nev. L.R. 8018 ("[p]ractice in bankruptcy appeals that may come before the district court will be governed by Part VIII of the Federal Rules of Bankruptcy Procedure"); Fed. R. Bankr. P. 8010(a)(1)(C) (appellate briefs must contain "[a] statement of the issues presented and the applicable standard of appellate review"); *In re Marquam Inv. Corp.*, 942 F.2d 1462, 1467 (9th Cir. 1991) ("failure to comply with Rule 8010(a)(1)(C) waives [an] issue on appeal").

After ASC waived any attempt to retake Schwartz-Tallard's property, the appeal was limited to whether and in what amount ASC owed Schwartz-Tallard damages. This is made particularly clear by the substance of Schwartz-Tallard's answering brief, filed on June 3, 2010. In that brief, for which Schwartz-Tallard seeks attorneys' fees in this appeal, Schwartz-Tallard defended the bankruptcy court's award of sanctions, but never argued (because ASC had never argued to the contrary) that the property should remain with

her. Thus, on May 10, 2010, the stay violation had been remedied by the Conveyance and Sanctions Order, because the status quo had been returned, and ASC could no longer disrupt that status quo. All litigation Schwartz-Tallard engaged in after May 10, 2010 was not "related to enforcing the automatic stay and remedying the stay violation." *Sternberg*, 595 F.3d at 940. Thus, the litigation was "attenuated from the actual bankruptcy," and her expenses paid thereafter not "actual damages." *Id.* at 948.

## B.

The majority confuses this simple analysis. First, the majority contorts language in *Sternberg* to improperly distinguish between "pursuit" and "defense" of an award of damages for a violation of the automatic stay. Second, in its fourth footnote, the majority opinion leads inextricably to a clear conflict with *Sternberg*.

## 1.

The majority ignores the holding in *Sternberg*, and instead misinterprets the next sentence of our decision. Majority Op. at 8. In that sentence, we stated that "[o]nce the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)." 595 F.3d at 947. The majority contorts this statement by emphasizing the phrase "pursuit of a damage award." The majority distinguishes that "pursuit" from "defense" of a damages award. Majority Op. at 9. The majority argues that if not for ASC's appeal, "Schwartz-Tallard's litigation of this matter would have been complete." *Id.* at 10. Citing the BAP, the majority also states that Schwartz-Tallard "was forced to defend [the] appeal to

validate the bankruptcy court's ruling," and thus "Schwartz-Tallard was not using the stay as a sword." *Id.* at 11.

But this analysis is wrong. The discussion of the "pursuit of a damage award" is not the "specific[] h[olding]" of *Sternberg*, which is more properly characterized as I have stated above: "actual damages" is an amount awarded to compensate for "proven injury," which in turn "is the injury resulting from the stay violation itself." 595 F.3d at 947. Indeed, the correct interpretation of the *Sternberg* sentence the majority focuses on compounds its error: "once the violation [of the automatic stay has ended, i.e., by the latest May 10, 2010, when ASC could no longer attempt to retake Schwartz-Tallard's property] any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)." *Id.* That should end the discussion and we should reject the majority's analysis.

Further, the majority (and the BAP) are wrong to conclude that Schwartz-Tallard was "forced" to defend ASC's appeal. Had Schwartz-Tallard not defended the appeal, she would have lost the damages properly awarded to her for ASC's violation of the automatic stay. But she would have retained her property. As of May 10, 2010, Schwartz-Tallard was in the same position as the debtor in *Sternberg*: had the debtor, Johnston, not sued the violators of the automatic stay in an adversary proceeding, he may not have ever received the damages award owed him. The adversary proceeding he filed, considered in this respect, was "an extension of [his] efforts to enforce [his] automatic stay." *Schwartz-Tallard*, 473 B.R. at 349. But we held in *Sternberg* that Johnston could only recover "actual damages," "even though it could be said he is not made whole as a result."

595 F.3d at 947. Nor does our *Sternberg* statement that the automatic "stay is a shield, not a sword," *id.* at 948, change our holding in that case denying damages to Johnston once he was finally returned to the status quo, even if he had to take legal action to maintain damages that were properly owed to him.

### 2.

The majority's error is made plainest in its fourth footnote. The majority states in opposition to my reasoning that "[b]ecause ASC explicitly challenged the finding that the stay existed at the time of its foreclosure, and challenged whether its foreclosure sale had violated any stay, Schwartz-Tallard's defense of that action was a continuation of her efforts to enforce the automatic stay." Majority Op. at 11 n.4 (citation omitted). But regardless of ASC's challenge to the finding that a stay existed when it foreclosed, the appeal could not lead to a retaking of Schwartz-Tallard's property, because ASC waived any argument to that effect by its brief filed on May 10, 2010. That meant, by definition, the appeal had nothing to do with enforcing the automatic stay or remedying the stay violation, because the stay had been reinstated on March 3, 2010 when ASC returned the property to Schwartz-Tallard.

The majority's reasoning leads to a statement that is obviously at odds with *Sternberg*. According to the majority, "[p]reventing violation of the automatic stay should contain at least litigation against stay violators in the bankruptcy courts to obtain a declaration of stay violation, and the defense of findings of stay violation on appeal." *Id.* at 11 In *Sternberg* itself, Johnston, the debtor, filed an adversary proceeding against Sternberg, seeking an order that he had

violated the automatic stay. 595 F.3d at 942. Ultimately, after Johnston's motion was denied by the bankruptcy court but reversed by the district court, the bankruptcy court entered an order concluding that "Sternberg wilfully violated the automatic stay." *Id.* Regardless of the fact that Johnston had engaged in "litigation against stay violators in the bankruptcy courts to obtain a declaration of stay violation," we *refused* to grant Johnston attorneys' fees for his adversary proceeding. A debtor is not entitled for attorneys' fees for litigation in the bankruptcy court that sought an order declaring a party in violation of the automatic stay, because "actual damages" "do[es] not include fees incurred in prosecuting the adversary proceeding to obtain damages." *Id.* at 949.

The rest of the majority's footnote fares no better. The majority states that under my theory, "efforts in the bankruptcy court to enforce the stay would be ineffective, because a stay violator could seek to avoid a finding of stay violation by filing an appeal, which the debtor would then be unable to defend for lack of attorneys' fees." Majority Op. at 11 n.4. If ASC had sought to reclaim Schwartz-Tallard's property in its appeal, then Schwartz-Tallard might be entitled to attorneys' fees for defense of that appeal. But if all a stay violator seeks is a finding that the stay was not violated, and that it should not have to pay the damages associated with such a finding, then the appeal is not related to enforcing the automatic stay. "[A] plaintiff cannot ordinarily recover attorney fees spent to correct a legal injury as part of his damages, even though it could be said he is not made whole as a result." *Sternberg*, 595 F.3d at 947.

Ultimately, the logic of the majority opinion does not follow. Both this case and *Sternberg* are governed by section 362(k)(1). How can the same statutory text require a

bankruptcy court to award attorneys' fees to Schwartz-Tallard but bar a bankruptcy court from awarding attorneys' fees to Johnston?

*Sternberg* controls this appeal. Our disposition should be quite simple under our holding in that case. Schwartz-Tallard was entitled to "actual damages" for ASC's violation of the automatic stay. The violation of the stay ended after the status quo when Schwartz-Tallard took back her property on March 3, 2010. Schwartz-Tallard's defense of the appeal was not related to remedying the stay violation after ASC waived any claim to the property in its appellate brief in the district court, on May 10, 2010. Any attorneys' fees Schwartz-Tallard paid after that date are not "an amount awarded to compensate for proven injury or loss," because the fees did not "result[] from the stay violation itself." *Id.* I would reverse the BAP because of its misinterpretation of *Sternberg*.

## III.

But strangely enough, even if the majority is correct that *Sternberg* is not controlling, we should still reverse the BAP. If *Sternberg* does not control the outcome of this case, then there is no Ninth Circuit precedent governing this appeal, and we independently interpret the relevant statute to determine whether to award Schwartz-Tallard the attorneys' fees she seeks. The BAP apparently realized this and sought such an independent basis in its own precedent of *In re Walsh*, 219 B.R. 873 (B.A.P. 9th Cir. 1998). *Schwartz-Tallard*, 473 B.R. at 350. The majority cannot take refuge in *Walsh*, as it has correctly abandoned the BAP's improper reliance on that decision because we overruled it in *Sternberg*. Majority Op. at 13 n.5. Of course, we all agree the BAP improperly relied on *Walsh*. But the legal sources on which the majority does

rely are also not sufficient to grant Schwartz-Tallard attorneys' fees.

## A.

If *Sternberg* does not control, although I would hold it does, we would have to assess independently whether to award Schwartz-Tallard attorneys' fees for her defense of the appeal from the Reconveyance and Sanctions Order. This is a question of statutory interpretation of section 362(k)(1), so we start with the text of the statute itself. *In re Blixseth*, 684 F.3d 865, 870 (9th Cir. 2012). That section allows "an individual injured by any willful violation of a stay . . . [to] recover actual damages, including costs and attorneys' fees . . . " 11 U.S.C. § 362(k)(1).

Although the plain language of the statute includes attorneys' fees as "actual damages," the term "actual damages" itself "is an ambiguous phrase." *Sternberg*, 595 F.3d at 947. "Congress legislates against the backdrop of the 'American Rule,'" whereby "parties are to bear their own attorney's fees." *Id.* at 945–46, *citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). Because of that backdrop and the ambiguity of the phrase "actual damages," we only grant attorneys' fees for "litigation attenuated from the actual bankruptcy" when Congress uses "explicit statutory language" to authorize the award of attorneys' fees. *Id.* at 948; *Hardisty v. Astrue*, 592 F.3d 1072, 1076–77 (9th Cir. 2010) (a statute that "creates an exception to the American rule" does not "extend[] fee-shifting to" a related circumstance, and "[i]n the absence of clear statutory text authorizing fee-shifting, we decline to become a 'roving authority' awarding attorneys' fees") (citation omitted).

B.

The text of section 362(k)(1) does not explicitly address the award of attorneys' fees to litigants like Schwartz-Tallard. Awarding such fees is "a bold departure from traditional practice" and so usually requires "explicit statutory language and legislative comment." *Fogerty*, 510 U.S. at 534; *see also Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 624 (9th Cir. 2008) (explaining that "[h]ad Congress aspired to such a radical departure [from the American Rule], it no doubt would have so indicated with explicit language to that effect").

Legislative history that "is at best ambiguous . . . is clearly insufficient to alter the accepted meaning of the statutory term," "[p]articularly in view of the 'American Rule' that attorney's fees will not be awarded absent 'explicit statutory authority.'" *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 607–08 (2001); *accord Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1044 (9th Cir. 2013) (en banc) (holding that "legislative history cannot supply a 'clear statement'"). We do not generally allow "inferences from . . . statutory purpose" to constitute an "unequivocal[] express[ion]" of legislative intent. *See, e.g.*, *Alaska v. E.E.O.C.*, 564 F.3d 1062, 1066 (9th Cir. 2009). Indeed, we have specifically held that when a party seeking attorneys' fees argues that the "purpose" of a statute supports awarding attorneys' fees, we will not award attorneys' fees if the cited statutory purpose reduces to "competing policy arguments," because "[s]uch a debate is not enough to overcome the absence of statutory text authorizing supersession of the American Rule." *Hardisty*, 592 F.3d at 1079.

## C.

The majority first claims that the "plain language of [section 362(k)(1)] includes attorneys' fees in the definition of actual damages," and states that "there is no reason to contort that language" to avoid awarding attorneys' fees. Majority Op. at 12. Though the majority is correct that the text of section 362(k)(1) allows attorneys' fees as part of actual damages, it incorrectly concludes that this supports its holding. The question in this appeal is whether these attorneys' fees *are* actual damages, an "ambiguous phrase." *Sternberg*, 595 F.3d at 947. No plain language in the statute states that attorneys' fees expended after a creditor waived any attempt to retake property are recoverable as actual damages. As we have recognized, if the plain text of a statute "creates an exception to the American rule," we do not expand that text to award attorneys' fees in a related circumstance not explicitly covered by the statute. *Hardisty*, 592 F.3d at 1076–77; *see also Sternberg*, 595 F.3d at 948 (refusing to award attorneys' fees for "litigation attenuated from the actual bankruptcy" even though section 362(k)(1) specifically authorizes some attorneys' fees). There is no "explicit statutory language" in section 362(k)(1) to support the majority's conclusion. *Fogerty*, 510 U.S. at 534.

The majority's only other legal basis for awarding these attorneys' fees is that "the fees incurred defending . . . an appeal meet [the] Congressional purpose" behind section 362(k)(1) in that its "decision here is consistent with both the financial and non-financial purposes of the automatic stay that we emphasized in *Sternberg*." Majority Op. at 12. An inference from legislative purpose can never be "explicit statutory language and legislative comment," *Fogerty*, 510 U.S. at 534, and is thus insufficient to demonstrate

Congressional intent to deviate from the American Rule. *Alaska*, 564 F.3d at 1066.

Indeed, the majority wrongly concludes that allowing Schwartz-Tallard to collect the attorneys' fees is "consistent with both the financial and non-financial purposes of the automatic stay that we emphasized in *Sternberg*." Majority Op. at 12.

Allowing attorneys' fees would not further the financial goals of the automatic stay recognized in *Sternberg*. ASC was a creditor of Schwartz-Tallard. "We have never said the stay should aid the debtor in pursuing his creditors, even those creditors who violate the stay." *Sternberg*, 595 F.3d at 948. If Schwartz-Tallard had not defended ASC's appeal, she would never have been able to recover the damages her creditor owed her, but the "stay is a shield, not a sword." *Id.* The economic purpose of the stay, to give Schwartz-Tallard time to put her finances back in order, would not be served if she were encouraged to continue to retrieve money from her creditor.

Nor does awarding attorneys' fees further the non-economic purpose of the stay recognized in *Sternberg*. "More litigation is hardly consistent with the concept of a 'breathing spell.'" *Id.* By defending against ASC's appeal, Schwartz-Tallard only created more litigation "attenuated from the actual bankruptcy." *Id.*

I understand that my suggestion that Schwartz-Tallard could have simply not defended ASC's appeal may seem unfair, but it is perfectly consistent with the "breathing spell" inherent in the automatic stay. It is also consistent with our recognition that the American Rule disfavors granting

attorneys' fees "even though it could be said [the debtor] is not made whole as a result." *Id.* at 947.

Thus, I do not believe the supposed purposes of the automatic stay divined by the majority clearly weigh in favor of Schwartz-Tallard. Like many disputes over statutory purposes, the majority's argument and what it calls *Sternberg*'s "policy analysis," Majority Op. at 9 n.2, "at most confronts us with competing policy arguments," which are not enough to overcome the background "American Rule" that each party bears its own costs. *Hardisty*, 592 F.3d at 1079. Thus, even if *Sternberg* does not compel the outcome of this case, I would still reverse the BAP because there is no "explicit statutory language and legislative comment" authorizing a departure from the traditional practice that Schwartz-Tallard should bear her own attorneys' fees. *Fogerty*, 510 U.S. at 534.

## IV.

Although the majority errs in affirming the BAP, the majority is correct in its footnote to deem the BAP's reliance on the decision in *Walsh* "improper." Majority Op. at 13 n.5. I agree with the majority on this point for a fundamental reason: the BAP cannot rely upon any of its own precedent that we have overruled without creating serious constitutional problems.

## A.

The Constitution vests the "judicial power of the United States" in the Supreme Court and inferior courts. U.S. Const. art. III, § 1. The federal judges subject to Article III "hold their Offices during good Behavior," which means they have

lifetime tenure unless impeached, and their "Compensation []
shall not be diminished during their Continuance in Office."
*Id.*

Congress has the power to create certain other federal
tribunals under its constitutionally delegated powers found in
Article I. One type of federal tribunal acts as an "adjunct" to
the Article III federal courts, a term used by the Supreme
Court to describe the role of certain administrative agencies
and the magistrate courts. *N. Pipeline Constr. Co. v.
Marathon Pipe Line Co.*, 458 U.S. 50, 77 (1982) (plurality),
*describing Crowell v. Benson*, 285 U.S. 22 (1932)
(administrative agencies) *and United States v. Raddatz*,
447 U.S. 667 (1980) (magistrate courts). For instance, the
magistrate courts are subject to the Article III district courts
in the district in which they are located. "[T]he district court
has plenary discretion whether to authorize a magistrate to
hold an evidentiary hearing," and "the magistrate acts
subsidiary to and only in aid of the district court," so that "the
entire process takes place under the district court's total
control and jurisdiction." *Raddatz*, 447 U.S. at 681.

But Congress does not have plenary authority to create
federal tribunals. Congress cannot grant jurisdiction over
cases that are rightfully within the "judicial power of the
United States" described in Article III to an Article I tribunal
without violating the Constitution and its separation of
powers principle. *N. Pipeline*, 458 U.S. at 63–64 (plurality).
Likewise, if Congress vests "essential attributes" of the
judicial power to an Article I adjunct that is not subject to
searching review by an Article III court and that can issue
binding and enforceable final judgments, the enacting law
also violates the Constitution. *Id.* at 85–86 (plurality).

Under the Bankruptcy Reform Act of 1978, Congress dramatically altered the existing bankruptcy system to modernize the bankruptcy laws. S. REP. No. 95-989, at 1 (1978). Congress replaced the bankruptcy "referees" from the Bankruptcy Act of 1898 with bankruptcy "judges" with far more power to resolve bankruptcy disputes. *Id.* at 2–3. The Reform Act also authorized the judicial councils of the circuits to order the chief judge of the circuit to designate panels of three bankruptcy judges to hear appeals from judgments, orders, and decrees of each bankruptcy court. Pub. L. No. 95-598, title II, § 201, *adding* 28 U.S.C. § 160. These "bankruptcy appellate panels," composed of bankruptcy judges, had jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts, as well as interlocutory judgments, orders, and decrees, if the panel granted leave. *Id.*, title II, § 241, *adding* 28 U.S.C. § 1482. Under the 1978 Act, if a Judicial Council of a circuit authorized a BAP, all appeals from decisions of bankruptcy judges had to be heard by that BAP, unless all parties stipulated to have the appeal taken to the court of appeals. Thomas E. Carlson, *The Case for Bankruptcy Appellate Panels*, 1990 B.Y.U. L. REV. 545, 546–47. Only the Judicial Councils of the First and Ninth Circuits authorized the BAP, and our circuit did so only for certain district courts. *Id.* at 547.

## B.

In *Northern Pipeline*, the Supreme Court struck down the composition and jurisdiction of the bankruptcy courts enacted under the 1978 Act. 458 U.S. at 77 (plurality); *id.* at 91–92 (Rehnquist, J., concurring). In that fractured decision, a four-justice plurality concluded that the bankruptcy courts as constituted exercised jurisdiction over cases properly

assigned to the Article III federal courts under the Constitution, *id.* at 63–76, and that the bankruptcy courts possessed too much power, with too little scrutiny by Article III federal courts, to be constitutionally acceptable adjuncts. *Id.* at 84–87. Justices Rehnquist and O'Connor concurred with both propositions, though on narrower grounds. *Id.* at 90–91 (Rehnquist, J., concurring) (without wholly addressing the general framework for adjudication of Congressional authority to create Article I courts, nonetheless agreeing that Article I tribunals cannot adjudicate certain types of common law actions and that the bankruptcy courts under the 1978 Reform Act were not constitutionally acceptable adjuncts because the only way for review by an Article III court was through "traditional appellate review"). Because the Court agreed that the decision involved an "unprecedented question of interpretation of [Article III]," it applied the rule only prospectively, and did not disturb previous orders of the bankruptcy courts. *Id.* at 87–88 (plurality).

In light of *Northern Pipeline*, the Judicial Conference of the United States issued a model "Emergency Rule" that was adopted by all of the district courts in the Ninth Circuit. *See In re Burley*, 738 F.2d 981, 984 n.2 (9th Cir. 1984). Under the Rule, "the district courts refer[red] all bankruptcy cases and proceedings to bankruptcy judges, who make recommendations and enter certain orders and judgments on behalf of the district court, subject to later district court review." *Id.*

The Bankruptcy Appellate Panel of the First Circuit reviewed the constitutionality of the BAP soon after *Northern Pipeline*, and concluded that although *Northern Pipeline* itself had not struck down review of bankruptcy decisions by the BAP, under the principles the Supreme Court recognized,

BAP review "violates Article III's command that the judicial power must be vested in Article III courts." *In re Dartmouth House Nursing Home*, 30 B.R. 56, 62 (B.A.P. 1st Cir. 1983). The First Circuit affirmed, not because the BAP violated the Constitution, but instead because it held that the Emergency Rule promulgated by the Judicial Council of the First Circuit "had the implicit effect of withdrawing from [the BAP] their earlier conferred authority to hear appeals." *Massachusetts v. Dartmouth House Nursing Home*, 726 F.2d 26, 29 (1st Cir. 1984).

A few months later, we reviewed a decision from the BAP that was entered after *Northern Pipeline*. *Burley*, 738 F.2d at 985–87. We focused on the constitutionality of the BAP because unlike in the First Circuit, our order adopting the Emergency Rule "expressly provid[ed] that the BAP shall" continue to hear appeals if the underlying bankruptcy order was entered before *Northern Pipeline* went into effect. *Id.* at 985 n.3. Unlike the BAP of the First Circuit, we concluded that the bankruptcy appellate panels were not unconstitutional. This was because, unlike in *Northern Pipeline*, the Article III court of appeals, rather than the BAP, retained the "essential attributes of the judicial power." *Id.* at 985. We may overturn the BAP's decisions "more freely" than the district courts could overturn the bankruptcy courts under the 1978 Bankruptcy Act, and thus "effectively" review their decisions de novo. *Id.* at 985–86. We concluded that the BAP meets the constitutional requirements for an adjunct tribunal, because we review their decisions de novo, retain full power to make final decisions, and retain control over the BAP through the discretionary choice to establish the panel by order of the Judicial Council of the Circuit. *Id.*

In response to *Northern Pipeline*, and soon after we had affirmed the constitutionality of the BAP in *Burley*, Congress passed the "Bankruptcy Amendments and Federal Judgeship Act of 1984." Pub. L. No. 98-353. Under that statute, the BAP could only hear an appeal from a bankruptcy judge if "all the parties" consented, and the court of appeals had appellate jurisdiction over any final decision, judgment, order or decree issued by the BAP. *Id.* at § 104, *inserting* 28 U.S.C. § 158. In August 1984, our Judicial Council of the Circuit re-established our BAP pursuant to the new statute, but no other circuit joined us. Thomas A. Wiseman, Jr., *The Case Against Bankruptcy Appellate Panels*, 4 GEO. MASON L. REV. 1, 2 (1995).

Because we were the only circuit to create a BAP, Congress modified the bankruptcy appeals statute in 1994 to *require* that the judicial council of each circuit establish a BAP unless the council decided that it did not have sufficient judicial resources or that the creation of the BAP would create undue delay or increased costs. 28 U.S.C. § 158(b). Since 1994, we have been joined by the First, Sixth, Eighth and Tenth Circuits. Jonathan Remy Nash & Rafael I. Pardo, *An Empirical Investigation into Appellate Structure and the Perceived Quality of Appellate Review*, 61 VAND. L. REV. 1745, 1757 (2008).

The Judicial Council of the Ninth Circuit has continued the BAP's service after the 1994 statutory modifications. *See* Judicial Council of the Ninth Circuit, "Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit" (effective November 18, 1988; as amended May 4, 2010). Under current Ninth Circuit BAP practice, seven active bankruptcy judges from districts within the Ninth Circuit are authorized to serve on the BAP. Each appeal is

heard by a panel of three judges, but no judge can hear an appeal originating from his or her district. Bankruptcy Appellate Panel of the Ninth Circuit Lit. Manual § III. An appeal from the bankruptcy court automatically goes to the BAP unless any party timely elects for the district court to hear the appeal. 28 U.S.C. § 158(c)(1). In certain exceptional bankruptcy cases filed after the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, parties can bypass both the BAP and district court and appeal directly to the Court of Appeals. *See In re Blausey*, 552 F.3d 1124, 1129–30 (9th Cir. 2009). The BAP has jurisdiction over certain interlocutory orders. 28 U.S.C. §§ 158(a)(2), (a)(3) & (c)(1).

## C.

Because the BAP is an Article I tribunal, we have consistently recognized that its decisions cannot bind us, or in fact any Article III court. *In re Silverman*, 616 F.3d 1001, 1005 n.1 (9th Cir. 2010) ("we treat the BAP's decisions as *persuasive* authority given its special expertise in bankruptcy issues") (emphasis added); *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) ("this Court is not bound by a [BAP] decision"); *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) (stating that "it must be conceded that BAP decisions cannot bind the district courts themselves. As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction"). The BAP has also long recognized that our decisions are binding on them, rather than the other way around. *See, e.g.*, *In re Ball*, 185 B.R. 595, 597–98 (B.A.P. 9th Cir. 1995) ("[w]e will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings").

Relatedly, we vacate any BAP decisions and judgments based on reasoning that we have overruled or rejected. *See, e.g.*, *In re Ransom*, 302 F. App'x 567 (9th Cir. 2008) ("Under [a Ninth Circuit case] which came down after the bankruptcy appellate panel had ruled, the provisions of the confirmed plan have preclusive effect. [The Ninth Circuit case] controls. It expressly overruled the bankruptcy appellate panel decision in this case. Accordingly, the judgment of the bankruptcy appellate panel is vacated") (citation omitted).

This discussion of the BAP's subordinate role is not academic. The control we exercise over the BAP and its decisions is necessary to justify the very existence of that court. *See, e.g*, *N. Pipeline*, 458 U.S. at 87 (plurality); *id.* at 91 (Rehnquist, J., concurring). If an Article I tribunal were to "exercise jurisdiction over all matters related to those arising under the bankruptcy laws," *id.* at 76 (plurality), or infringe upon "essential attributes of the judicial power" without sufficient scrutiny by an Article III court, *id.* at 86–87 (plurality), we would have to "emphatic[ally]" reassert "the integrity of the system of separated powers and the role of the Judiciary in that system" by striking down the offending Article I tribunal, even if its infringements "may seem innocuous at first blush" and only "chip away at the authority of the Judicial Branch." *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011).

D.

In 1998, the BAP issued its decision in *In re Walsh*, which stated that "if appellate fees and costs are" not awarded, "then the injured party is not made whole," and thus held that "[c]learly, fees and costs experienced by the injured party in resisting the [stay] violator's appeal are part of the

damages resulting directly from the stay violation" under the predecessor to section 362(k)(1). 219 B.R. 873, 878 (B.A.P. 9th Cir. 1998). In *Sternberg*, we specifically rejected this interpretation of the statute. 595 F.3d at 947 ("The Bankruptcy Appellate Panel, for example, seems to view 'actual damages' as requiring an award that returns a debtor to the position he was in before the stay violation occurred. *See Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 878 (9th Cir. BAP 1998) (rejecting an alternative reading of the statute under which, according to the BAP, 'the injured party is not made whole'). . . . In contrast, we conclude that the plain meaning of 'actual damages' points to a different result") (alterations omitted).

In the present appeal, the BAP cited and relied on *Walsh*'s precise holding, explaining that "*Sternberg* admittedly rejected the BAP's determination in *Walsh* that § 362(k)'s predecessor, § 362(h), required an injured party to be made whole. At the same time, *Sternberg* did not invalidate *Walsh*'s finding that damages incurred on appeal are actual damages directly resulting from the stay violation itself." *Schwartz-Tallard*, 473 B.R. at 350 n.12.

In fact, we specifically overruled *Walsh*, even mentioning it by name. *Sternberg*, 595 F.3d at 947. We also specifically rejected the broader holding of *Walsh* that "actual damages" required "an award that returns a debtor to the position he was in before the stay violation occurred." *Id.* The BAP was flatly wrong.

E.

The BAP's citation to a precedent we specifically rejected is not only unacceptable under our precedent and its own

decisional law. *Ransom*, 302 F. App'x at 567; *In re Ball*, 185 B.R. at 597–98. The reliance on such precedent is an attack on Article III of the Constitution. *N. Pipeline*, 458 U.S. at 86–87 (plurality). For an Article I tribunal to rely on precedent that we have expressly rejected may infringe upon the "essential attributes of [our] judicial power." *Id.*

This constitutional concern is particularly evident in the two classes of BAP decisions that we do not review on appeal. As Judge Norris observed, we do not review the BAP when the losing party does not appeal the adverse decision from the panel, and when the BAP decides a non-final bankruptcy order under its interlocutory jurisdiction. *Burley*, 738 F.2d at 989–93 (Norris, J., dissenting). If the BAP were to deviate from our authoritative decisions, and instead were to apply its own law in either of these two circumstances, it would very likely trammel essential attributes of our judicial power and thus violate the Constitution.

First, not all BAP cases are appealed by the losing party. *Id.* at 990–92 (Norris, J., dissenting). In those circumstances, there is "no direct article III control over [the] individual case[]." *Id.* at 992 (Norris, J., dissenting). If the BAP were not to follow federal law as stated in our decisions, and if the party subject to that decision were to lack the resources to rectify the BAP's error, that party would be bound erroneously by an Article I tribunal.

Second and more worrisome, the BAP has jurisdiction over some interlocutory bankruptcy orders that we do not have appellate jurisdiction to review. *Id.* at 992–93 (Norris, J., dissenting); *see also In re Lievsay*, 118 F.3d 661, 663 (9th Cir. 1997) (per curiam) (dismissing an appeal from a BAP decision on an interlocutory order). If the BAP were to ignore

our precedent in such a case, the losing party would have no recourse to rectify the error until the bankruptcy court issued a final order, and could be bound for years by this improper interpretation of federal law by an Article I tribunal. That, I suggest, would clearly violate the separation of powers doctrine by infringing upon our judicial power under Article III.

I do not contend that the BAP is consistently ignoring our opinions, or that it has done so in a case we have not reviewed. But all subordinate courts must follow the authoritative decisions of higher courts. *See, e.g.*, *United States v. McCalla*, 545 F.3d 750, 753 (9th Cir. 2008) (stating that to the extent the defendant seeks to "set aside or disregard United States Supreme Court precedent, we simply cannot accommodate him. As the Supreme Court has expressly stated, 'it is this Court's prerogative alone to overrule one of its precedents,'" *citing State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)). The BAP, which is a subordinate tribunal created by Congress and authorized by our Judicial Council of the Circuit, must be particularly careful to follow our precedents, and must never ignore them in favor of its own decisions, lest it infringe upon the essential attributes of our judicial power, created by the higher law of the United States Constitution. In such a case the correcting power would be action by the Judicial Council of the Circuit.

## V.

The majority incorrectly holds that our decision in *Sternberg* does not control this case. I am convinced to the contrary. Even if the majority were correct, however, it cites no persuasive basis for awarding attorneys' fees to Schwartz-Tallard.

The BAP's decision to ignore our binding precedent raises serious threats to the separation of powers. The majority, the BAP, and some out-of-circuit judges, cited at Majority Op. at 9 n.2, fundamentally disagree with our holding in *Sternberg*. If they are correct, the proper outlet for review of our decision is our court en banc or the Supreme Court. The BAP is a subordinate court, bound to follow our decisions, and as a three-judge panel, we must follow prior panel precedent, whether or not the decisions were decided incorrectly or have been criticized by other courts. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). I dissent.